### ASHWORTH *v.* SOUTHERN RAILWAY CO. *et al.*

1. The only duty which a railroad company owes, in this State, to a trespasser upon or about its property is not to injure him wantonly or wilfully; but this rule does not relieve the company, under all circumstances, from anticipating the presence of a trespasser upon its property and from taking proper precautions to prevent injury to him.

2. Where a number of children, ranging in age from six to fifteen years, are, with the knowledge and without the disapproval of the employees of a railroad company in charge of its trains, permitted to board and ride upon the trains while they are passing over a side-track through a playground of the children to a point beyond and while they are returning from such point to the main line of the road, the children alighting from the trains at the limits of the playground both going and returning, and this custom is a continuous one, engaged in whenever the trains enter the playground, it is the duty of the employees of a train who are aware of this custom to anticipate that when the train enters the playground the children will attempt to ride upon it and alight from it at the point where they have been accustomed to do so; and they are under a further duty, consequent upon the first, to take proper measures to prevent injury to such children.

3. Where, under the circumstances above detailed, a child lacking in experience and discretion and incapable of appreciating the danger incident to his conduct, gets upon the running-board behind the tank of an engine before the engine begins its return trip through the playground, and is injured while attempting to jump therefrom at the point where children have been for a long time previous continuously in the habit of alighting, the company is liable in damages for the injuries thus received, even though its employees in charge of the train have no actual knowledge of the presence of the child upon the running-board of the engine. An ordinarily prudent person would, under such circumstances, have reason to anticipate the presence of the child upon the engine, and the servants of the company, as prudent men, would be required to ascertain whether the child is in fact upon the engine before beginning the return trip, and should either require him to alight, or at least stop the train for this purpose at the place where the children have been accustomed to alight.

5. A petition setting forth facts such as are above detailed should not have been dismissed on a general demurrer.

Argued November 13, — Decided December 10, 1902.

Action for damages.    Before Judge Henry.    Floyd superior court.    April 3, 1902.

*Seaborn & Barry Wright,* for plaintiff.    *Shumate & Maddox* and *Harris, Chamlee & Harris,* for defendants.

COBB, J.    The plaintiff brought his action against the railway company and Wyley Hartin, for damages.    The defendants filed a demurrer to the petition, upon various grounds.    The demurrer was sustained, and the plaintiff excepted.    The only ground of the demurrer insisted upon in this court was that which set up that the petition set forth no cause of action.    The petition was, in substance, as follows:    On the 10th day of June, 1901, and for two or three years prior thereto, the defendant company used a track extending from its main line, a distance of half a mile through the village of Lindale, into the yard of a manufacturing company.    For about one hundred and fifty yards from the entrance to the manufacturing company's yard the track extends through the village "common," and after leaving the common the track extends across the principal street of the village into the yard.    The village common was on the day above named, and for some time prior thereto had been used as a playground by the children of the village.    It was the custom of these children to board the engines and cars of the defendant when they came into the common and ride upon them while they remained in that place, and when such engines and cars entered the yard of the manufacturing company the children were accustomed to jump off, and likewise when the engines and cars left the common for the main line the children would jump from them to the ground.    This was not an occasional practice, but was usually and regularly done when the engines and cars came into the common.    This custom of the children to ride upon and jump off the cars and engines was known to the defendant company through the knowledge of its servants and employees who operated the trains, and to Wyley Hartin, a servant of the railway company, who, with other employees, was in charge of the engine and cars on the date above mentioned.    The children who were accustomed to board the engines and cars of the defendant while on the common ranged in age from six to fifteen years.    On June 10, 1901, the plaintiff, a child of eight years, was upon the village common with a large number of other children, when a switch engine

of the defendant company, which was pushing a number of box-cars, came into the common and stopped on the track, preparatory to pushing the cars into the yard of the manufacturing company. While the engine and cars were stationary, a number of children climbed upon and into the cars, and one child, together with the plaintiff, stepped upon the running-board behind the tank of the engine. In a few moments the cars were pushed by the engine into the yard. The engine itself did not enter the yard, but was reversed and started backward with the plaintiff and his companion on the running-board. When the plaintiff and his companion discovered that the engine was going out to the main line, they jumped from the engine, as was the custom, and in doing so the plaintiff fell under the engine, which ran over his legs, cutting them off between the knees and ankles. The plaintiff had never been upon the cars or engine before that time, and was induced to do so upon the occasion in question by the unrestrained liberty of many other children, some older and some younger than himself, to so ride upon the engine and cars. The petition alleges that it was the daily custom of children, too young to appreciate the danger, at the particular place mentioned, to ride upon and jump from the engine and cars of the company, and this custom was known to the defendant company and to Wyley Hartin. It is alleged that no reasonable, serious, and effective effort to keep the children off the engine and cars at this particular place had been made by the employees of defendant who operated the engine and cars, or any one else, and this was known to defendant company and to Wyley Hartin; that the children could have been kept off and away from the engine and cars by ordinary and reasonable care and effort; that knowledge of the presence of the children put the defendant company and Wyley Hartin upon legal notice of the presence of the plaintiff upon the running-board of the engine at the time of his injury, and imposed upon defendants the duty of examining the cars and engine before starting for the main line of the road, and of removing the plaintiff therefrom; that the injury was occasioned by the negligence of defendants, and that the plaintiff was without fault, he being an infant of eight years.

Notwithstanding the plaintiff was an infant of immature years, he was wrongfully upon the running-board of the company's engine, and was therefore a trespasser. The only duty which a railroad

company owes a trespasser is not to injure him wantonly or wilfully ; and ordinarily this rule imposes upon the company simply the duty of taking proper precautions after the presence of a trespasser in a position of peril has been discovered. It will not do, however, to lay this down as an absolutely invariable rule. A railroad company may, by its own acts and conduct, impose upon itself the duty of anticipating the presence of a trespasser in such a position. Indeed, in no case would the servants of a railroad company in charge of its train be warranted in closing their eyes to avoid seeing a person of whose presence they had had previous warning or when under the circumstances they ought to have known of his presence. In referring to the duty of a railroad company to a trespasser upon or near its tracks, Mr. Justice Fish, in *Crawford* v. *Railway Co.*, 106 *Ga.* 870, 873, used this language: " Admitting, for the sake of the argument, that the general rule is that a railroad company owes no duty to a trespasser who is upon or dangerously near its track in front of a moving train, until its servants have discovered his presence there, and therefore, so far as his safety is concerned, is not obliged to maintain a lookout in the direction in which the train is moving, we do not think that this could properly be held to be a uniform, fixed, and invariable rule, applicable alike to all cases and under all circumstances. Conduct which might, under one set of circumstances, show that all ordinary and reasonable care and diligence had been observed, might, under a different set of circumstances, be insufficient to show an observance of such care and diligence. We think that such a rule could mean no more than this : taking the locality where the train is running and all the surrounding circumstances, if those in control of the movement of the train have no reason to apprehend that there may likely be a human being on the track in front of the engine, they are under no duty to one who may in fact be there, until they have actually discovered that he is there. But if, from the locality or surrounding circumstances, there is reason to apprehend that the track in front of the locomotive may not be clear of human beings, then, it seems to us, it is the duty of the employees of the company to keep a lookout ahead of the train." There is no reason why the rule above laid down is not applicable to trespassers in other situations of peril in and about the property of railroad companies ; and in such cases it may be laid down as a safe

rule that the railroad company must not wantonly or wilfully injure the trespasser after his presence has become known, and must use proper diligence to discover him if, under all the circumstances, it has reason to anticipate that he may be present at that particular place and that particular time. And more especially would this be so in a case where the company, by its own acts and conduct, rendered it likely that he might be present at that time and place. The rule as to the duty of the company to anticipate the presence of an infant trespasser is no more rigorous than in the case of an adult; but there are cases where the company would be justified in assuming that an adult would extricate himself from his position of peril, when it would not be authorized to presume that an infant of immature years and lacking in discretion and judgment would do so.

A railroad company can not, in all cases, relieve itself from liability to a trespasser by showing merely that its servants and employees did not know of the presence of the trespasser, but in some cases it must go further and show that there were no circumstances from which an ordinarily prudent person would have had reason to anticipate his presence. See, in this connection, Williams v. Railroad, 37 Am. & Eng. R. Cas. (Mo.) 329; Atchison R. Co. v. Plaskett, 47 Kan. 107; Whalen v. R. Co., 41 Am. & Eng. R. Cas. (Wis.) 558; Chicago Ry. Co. v. Smith, 4 Id. 535; Townley v. Ry. Co., Id. 562; East St. Louis Ry. Co. v. Jenks, 54 Ill. App. 91, 96; 3 Ell. Rds. § 1260; Hopk. Pers. Inj. § 87.

If a railroad company expressly invites, or tacitly permits, persons to be upon its premises, or in or about its machinery, the company owes to such persons the duty, not only not to injure them when their presence becomes known, but also to anticipate their presence at the time when or the place where such invitation or permission would probably bring about their presence, and to take such measures as ordinary prudence would require to prevent injury to them if they are in fact present. A railroad company is the owner of its right of way, its track, and its machinery, and is entitled to exclude therefrom others who have no interest or right therein. A railroad company which continuously permits persons to be upon its right of way or in or about its machinery at given times and places is put on notice by this conduct on its part that such persons may be present at such times and places; and

by this conduct it imposes upon itself the duty, not only to prevent injury to such persons, but to anticipate their presence and take the precautions of an ordinarily prudent person to prevent injury to them.    Let these principles be applied to the allegations of the petition in the present case.    It is alleged that a side-track of the defendant company extended through a village common used by the children of the village as a playground, and that, with the knowledge of the company and its servants in charge of its engines and cars, these children were accustomed to board the engines and cars as they came through the common and ride upon them to the limits of the common.    On the occasion upon which the plaintiff was injured, the children, following the usual custom, and without any objection being raised by the employees of the company, got upon a switch-engine and the cars attached thereto for the purpose of riding the length of the common.    If the allegations of the petition are true, it is impossible to conclude that the servants of the company in charge of the engine and cars did not know that the children had boarded them ; and as it was the custom of the children to ride out toward the main line to the end of the common, ordinary prudence would require that the employees of the company should anticipate that some of them would remain on the engine or cars until the end of the common was reached.    Negligent ignorance is in law equivalent to knowledge; and if the servants of the company knew the children were aboard the cars or upon the engine, it was their duty to stop the train and require them to get off.    Instead of doing this, the train was allowed to proceed on its way, thus allowing small children, inexperienced and without discretion, to alight from the moving train.    The plaintiff in this case was a boy eight years of age, probably incapable of appreciating the danger of alighting from a moving train, especially when guided by the example of an older boy who was his companion.    The plaintiff was on the running-board of an engine which was moving backwards, and, according to the allegations of the petition, the servants of the defendant company had, as reasonably prudent persons, sufficient grounds to anticipate his presence upon the engine, and, in legal contemplation, knew he was there, were aware of his perilous position, and yet took no steps to protect him against this ignorance and inexperience.    The allegations of the petition make a case of wanton and wilful injury, not wilful in the sense of intentional, but

wilful in the legal sense, growing out of a failure to anticipate the plaintiff's presence and provide against his injury, when it should have been done.

Railroad companies may not be bound to anticipate that children will be allured by passing trains and attempt to board and ride upon them. But when the right of way of a railroad company extends through a place used as a playground by a number of children of ages varying from six to fifteen years, and when these children are accustomed continuously, every time the train enters the playground when they are upon it, to swarm upon the train and ride to the limits of the playground, and when the employees of the company know of this custom and make no objection to it, the company is bound to carry the burden which such a knowledge and tacit permission imposes, and this burden would require the company to comply with the demands of ordinary care for the prevention of injury to the children. In Louisville Railroad Co. v. Popp (Ky.), 27 S. W. 992, the railroad company had two cars stationed on a side-track near a depot, for the purpose of being attached to an excursion-train. Children of all sizes were in the habit of going about the depot building and grounds for pastime and amusement, and this was known to the servants of the company in charge of the train by which the plaintiff, a small boy, was injured. It appears that the plaintiff and a companion went into one of the vacant cars to get ice water, and remained in the car loitering about for some time, the plaintiff remaining on the platform. When an engine with four cars attached was backed for the purpose of making a coupling to the car on which the plaintiff was standing, he became frightened and endeavored to get on the bumper of the car, and while making this attempt was caught between the backing car and the bumper and was injured. There was no evidence that the employees in charge of the train actually saw the plaintiff in time to avoid injuring him, but the company was held liable on the theory that under the circumstances of the case they were bound to anticipate his presence there and to take proper measures to prevent injury to him. In Thompson v. Railway Co. (Tex.), 32 S. W. 191, the petition alleged that the plaintiff, a child twelve years of age, was injured while attempting to board a moving freight-train at a public crossing which was much frequented by children and the public generally. It

was alleged that the plaintiff and other children were, within the knowledge of the employees in charge of the train, in the habit of boarding trains at that crossing and riding a distance ; and that the fact that the plaintiff was attempting to board the train when he was injured either was known to the employees operating the train, or could have been known by the exercise of ordinary diligence. It was held that the declaration set forth a cause of action. In Tully *v.* Railroad Company (Del.), 47 Atl. 1019, a boy was killed while on an empty stationary car of the defendant company. There was evidence tending to show that the employees of the company actually knew of the boy's presence upon the car, and evidence of a custom on the part of children to play in the empty cars of the company was held to have been properly rejected, solely for the reason, however, that inasmuch as the employees, under the evidence, actually knew of the boy's presence, evidence of the custom was immaterial. In Harriman *v.* Railroad Company (Ohio), 12 N. E. 451, the company was held liable for injuries received by a boy from an exploding torpedo which had been picked up by the boy, and which the company had placed on its track at a point where the plaintiff and other children, together with the general public, had, with the knowledge and without the disapproval of the company, been accustomed to cross the track.

The recent case of St. Louis Ry. Co. *v.* Abernathy (Tex.), 68 S. W. 539, is very similar to the present case. In that case the company was engaged in ditching and leveling up its road-bed with a steam plow within the limits of an incorporated town. The construction-train used by the company consisted of an engine and three or four cars, and the steam plow and scraper were attached to this train. The machinery and apparatus were new to the residents of the town, and attracted many children and grown people to see them operate. From the time the work was commenced, numbers of small boys from five to eighteen years of age were attracted by the train and machinery, especially before and after school hours, and on Saturdays all day, ranging in numbers from ten to fifty. The boys were permitted by the employees to ride upon and be in and around the train, in the caboose, on the steps, on the flat cars, around the air machinery, in the cab of the engine, on the cow-catcher, along and upon the right of way, and in front of the plow and behind it. The son of the plaintiffs, a boy

ten years of age, was seen by a bystander riding upon the pilot attached to the tender of the engine, and when first seen by the employees of the company in charge of the train was lying across the track rail just in front of the back wheels of the tender, and then it was impossible to prevent the train from running over him.   The employees of the train did not know that the boy was on the pilot. attached to the tender of the engine.   The court ruled: "Where children are on or about a work-train so frequently that a person of ordinary prudence will apprehend danger to them, the fact that employees do not know that a child is on the train in a dangerous position does not relieve the railroad company from liability for an accident resulting therefrom."   In the opinion, in discussing whether the court properly submitted to the jury the question whether the employees of the defendant ought to have anticipated the boy's presence on the pilot of the engine, it is said : " If, as a matter of fact, boys of immature years and discretion were on and about the train so frequently that persons of ordinary prudence would have apprehended danger to them, although the employees at the time did not know deceased was on the train, then it devolved upon the employees to use ordinary care to ascertain whether or not some were on the train and prevent injury."

This case is to be distinguished from the case of *Underwood* v. *Railroad Company,* 105 *Ga.* 48, in that there were in that case no allegations in the petition from which it appeared that the employees in charge of the train had reason to apprehend that Underwood was upon or about the train at the time of the injury.   It was alleged that he had, previously to the injury, been in the habit of climbing upon and riding on the moving trains of the defendant at that place, but there was no allegation which would charge the employees with knowledge of his presence on the train at the time of the injury.   The court erred in dismissing the petition.   Of course, when the trial is had it will be necessary to submit to the jury the question of contributory negligence of the plaintiff; and for the rules governing in cases of this kind see Hopk. Pers. Inj. § 7 et seq.; Tully *v.* Railroad Co., supra.

*Judgment reversed.   All the Justices concurring, except Lumpkin, P. J., absent.*