## BULLARD v. SOUTHERN RAILWAY COMPANY.

1. Where a number of persons habitually, with the knowledge and without the disapproval of a railroad company, use a private passageway for the purpose of crossing the tracks of the company at a given point, the employees of the company in charge of one of its trains, who are aware of this custom, are bound, on a given occasion, to anticipate that persons may be upon the track at this point; and they are under a duty to take such precautions to prevent injury to such persons as would meet the requirements of ordinary care and diligence.
2. The rule above stated is more especially applicable where the crossing is at a populous locality within an incorporated city.
3. In view of the allegations of the petition, it was a question for the jury to determine whether the deceased could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence after the same was existing and was either apparent or the circumstances were such as to cause a reasonable person to apprehend its existence.
4. The allegations of the petition made a case for submission to a jury, and the court erred in dismissing the same on demurrer.

Argued November 18,—Decided December 10, 1902.

Action for damages. Before Judge Hammond. City court of Griffin. March 4, 1902.

*Marcus W. Beck* and *Charles R. Gwyn*, for plaintiff.
*Battle & Little* and *Searcy & Boyd*, for defendant.

COBB, J. Emma A. Bullard brought suit against the Southern Railway Company, making in her petition substantially the following allegations: Petitioner is the mother of Jessie Bullard, who was killed by the running of a passenger-train of the defendant within the corporate limits of the City of Griffin, Georgia, on the 11th day of September, 1900. Plaintiff was largely dependent upon the labor of the deceased for a support, she contributing a stated sum per month for such support. The deceased was killed by being struck by an engine, and the train to which the engine was attached was being run at a high and negligent rate of speed, to wit, from 35 to 40 miles per hour. The killing occurred within 250 yards of where a street of the city crossed the track east or southeast, and no signal was given of the approach of the train either by the ringing of a bell or the blowing of the whistle. The engine was being run through a populous and thickly settled section of the City of Griffin at a time when and place where people from the different cotton mills were continually passing from their

work in the mills to their homes, and the killing occurred upon a crossing constantly used by the public in crossing the railroad at that point, which facts were known to the employees of the defendant in charge of the train. Notwithstanding these facts, the train was run at such a high and reckless rate of speed as to make it gross negligence on the part of the defendant; and in addition to this, if the employees of the train had been upon the lookout, they could have seen the deceased and several companions who were with her, as they entered upon the track, for at least 500 yards, and, having passed the blow-post for the crossing, it was the duty of the defendant to check the speed of the train, the killing occurring at least 150 yards south or southeast of the blow-post and near the crossing; and had this been done and the approach of the train been signaled, the deceased would have been warned of the approach of the train in time to have avoided the injury, but, instead of doing this, the employees of the train ran it at a rate of speed which, in view of the place where the killing occurred, amounted to wantonness, the train being behind time. The deceased was killed at a crossing which was used by the public daily for crossing the railroad at that point. She and her companions believed the train had passed, it being later than the schedule time by about thirty minutes, and they were not expecting a train from that direction, their backs being turned in the direction of the approaching train. The deceased was in the exercise of all due care and caution, and was killed without fault or negligence on her part. She could not have avoided the negligence of the defendant by the use of ordinary care, the train approaching so rapidly without warning, and giving only one or two short whistles of the engine when within a few feet of her, but not in sufficient time for her to get off or out of the way of the engine. Defendant was negligent and lacking in ordinary care in running its train at such a high rate of speed at the time and place stated, and negligent in not giving any signal of its approach, and in not keeping a lookout, or, if the engineer was on the lookout, in not giving sufficient warning of the approach of the train; and also negligent in not slacking its speed at the blow-post and continuing to slacken as the train approached the crossing, and in not tolling the bell and blowing the whistle at the blow-post and continuing until the train reached the crossing, and in being behind schedule time.

The petition was amended by alleging that at a point about ten or fifteen yards beyond and outside the city limits near the track, and some 150 yards from where the deceased was killed, was a blow-post, at which the whistle of defendant's locomotive should have been blown, and at which the speed of the train should have begun to slacken, but defendant's servants at this blow-post neither blew the whistle nor began to slacken the speed of the train. The petition was further amended by alleging that at the time deceased was killed she and her companions were expecting a northbound train on the tracks of the Central of Georgia Railway Company, which train was about due, the tracks of the Central of Georgia Railway Company being within a few feet of the defendant's track at the point where deceased was killed.

The defendant demurred to the petition, on the following grounds: Because the petition sets forth no cause of action; it is apparent from the allegations of the petition that the deceased could, by the exercise of ordinary care, have avoided the accident; the death of the deceased was attributable solely to her own negligence and want of care, it appearing that she was killed at a place where the train could have been seen for a distance of 500 yards or more; the accident occurring at a place 250 yards distant from a public crossing, the defendant was under no duty to the deceased, she being a trespasser and a wrong-doer, until she was actually seen by the engineer in charge of the train or until her danger was apparent. The demurrer was sustained and the petition dismissed, and to this the plaintiff excepted.

The foregoing demurrer is general in its character, and involves only the question whether the petition set forth a cause of action; and the determination of this question depends upon whether the defendant has violated any duty which it owed the deceased at the time when and the place where she was killed. It is of but little consequence, under the allegations of the petition, whether the deceased was to be classed as a licensee or a trespasser on the company's tracks at the place where she was killed. The authorities differ widely both as to when a person is to be treated as a licensee and as to the duty which the railroad company owes to such a person. The rule, however, seems to be very generally recognized that a person is not a licensee unless he has permission, either express or implied, from the company to use the property of the com-

pany.  As to whether permission will be implied from the mere habitual use of the property without objection, the authorities do not seem to be agreed.   We do not find it necessary in this case to solve any of these mooted questions, but interesting and exhaustive discussions and citations bearing thereon will be found in 3 Elliott on Railroads, §§ 1154, 1248 – 1251; 6 Rap. & Mack's Dig. Ry. L. 265 ; 2 Shear. & Red. Neg. (5th ed.) § 480, p. 841 –2 (notes).

But let it be conceded, for the purposes of this discussion, that the deceased was a trespasser, what was the measure of the defendant's duty to her?  Expressions will be found in many of the cases, to the effect that the only duty which a railroad company owes to a trespasser is not to injure him wantonly or wilfully after his presence in a position of peril has been discovered.   That this statement of the defendant's duty is entirely too broad and not applicable to all cases and under all circumstances, was pointed out by Mr. Justice Fish in *Crawford* v. *Railway Co.*, 106 *Ga.* 870, and more recently by the writer in *Ashworth* v. *Railway Co.*, ante, 635, where a full discussion of the subject will be found.   It was there held, in substance, that where persons, though trespassers, habitually use the property of a railroad company with the knowledge and without the disapproval of its employees having such property in charge, the railroad company is bound to anticipate that such use of the property will continue; and will not be heard to say, after injury has been inflicted upon one of such trespassers, that it did not know of his presence upon the property. The rule applicable to such a case as the one now being dealt with is thus stated by Hon. John L. Hopkins, in his admirable work on the Law of Personal Injuries of force in this State:   "Where no permission is given, but there is a habit on the part of individuals or the public of traveling over the track on foot, and nothing is done to prevent it, that does not modify or change the legal rights or obligations of either the public or the company.   By such use the public are not tacitly licensed to go upon the track, and the consent of the company to the use is not implied; but the fact that they do go there enters into the situation as it is known to the company, and affects the caution and amount of care required in running the trains."   Hopk. Pers. Inj. § 87, p. 142.

We do not think any decision of this court can be found where it was held that where a person habitually used a passageway

across the tracks of a railroad company at a particular point, with the knowledge and without the disapproval of the company, it was under no higher duty to him than simply not to injure him wilfully after his presence on the track was discovered. On the contrary, exactly the opposite rule has been applied in a case where the trespasser was using the tracks of the company longitudinally at a place where the public were in the habit of passing along the tracks. That case was *Western & Atlantic Railroad Co.* v. *Meigs,* 74 *Ga.* 864, and it was there said: "There was no error in admitting the testimony relating to the habit of the public in walking on defendant's tracks at and near the place where this injury happened. While this habit, even if acquiesced in by the railroad company, did not prevent the deceased from being a trespasser, it was a circumstance which the jury might properly consider in determining whether or not the persons in charge of the train showed proper diligence at the time the killing occurred. Railroad engineers should observe more caution in running at places where they know persons are likely to be on the track than elsewhere, even if those persons are trespassers, and especially is this true when the company has at least tacitly consented to this otherwise unauthorized use of its property by the public." See also, in this connection, 3 Ell. R. R. § 1154; *Central Railway Co.* v. *Bond,* 114 *Ga.* 913.

While the failure of the defendant company to observe the statutory requirements as to blowing the whistle and checking the speed of the train may not have been, relatively to the deceased, negligence per se, it was bound to anticipate the presence of the deceased at that particular place, and consequently was under a duty to take some steps to prevent injury to her. It was for the jury, and not for the court, to say what was the measure of its duty under all the circumstances of the case. If ordinary care would have required that the whistle be blown, or the bell tolled, and the speed of the train slackened, then the company would be liable for its failure to do these things. Under the allegations of the petition, no precautions whatever were taken to prevent the unfortunate casualty which resulted in the death of the plaintiff's daughter. In passing upon the question as to what rate of speed and what signals would have met the requirements of ordinary care on the part of the defendant company, the jury will also take into consideration the fact that the killing occurred in a populous lo-

cality within the limits of an incorporated city.    Under such circumstances a greater degree of care is necessary in passing over a portion of the track used by the public as a passageway.    See *Georgia Railroad Company* v. *Cromer*, 106 *Ga.* 296, citing *Comer* v. *Shaw*, 98 *Ga.* 543.    It will also be for the jury to say whether the deceased could have avoided the consequences of the defendant's negligence, by the exercise of ordinary care.    No such duty on the part of the deceased arose until the negligence of the company was existing, and was either apparent or the circumstances were such that an ordinarily prudent person would have had reason to apprehend its existence.    *Western & Atlantic Railroad Co.* v. *Ferguson*, 113 *Ga.* 708.    The allegations of the present petition present a stronger case than the facts of that just cited, where a verdict was upheld on the theory that the jury were warranted in finding, under the operation of the rule above stated, that the plaintiff could not have avoided the result of the negligence by the exercise of ordinary care.    It is alleged in this case that the train was about thirty minutes late, that the deceased and her companions had reason to believe that it had already passed, that they were expecting a train on another railroad a few feet away to approach from an opposite direction, and that the deceased could not have seen or heard the train until it was too late to avoid the casualty.    We do not say that the plaintiff ought to recover, even if these allegations be proved ; but it was certainly not within the power of the court to say, as matter of law, that she ought not.    She made a case which entitled her to go to a jury, and the court erred in dismissing her petition.

    *Judgment reversed.    All the Justices concurring, except Lumpkin, P. J., absent.*