## HUNTING & COMPANY *v.* QUARTERMAN.

1. There was sufficient evidence to support a finding that the plaintiff's decedent used the staging, the collapse of which caused his death, with the knowledge and acquiescence of the defendants. In such a case it was their duty to exercise ordinary care and diligence for his safety.
2. The evidence objected to was not shown to have been of sufficient materiality, even if inadmissible, to injuriously affect the rights of the defendants; the charge of the court fully and fairly presented to the jury the issues involved: and the evidence warranted the verdict in favor of the plaintiff.

Argued April 11, — Decided June 9, 1904.

Action for damages. Before Judge Barrow. Chatham superior court. December 5, 1903.

*O'Connor, O'Byrne & Hartridge*, for plaintiffs in error.
*Adams & Adams*, contra.

CANDLER, J. Hunting & Company were in the lumber business in Savannah, and in connection with their business loaded vessels at their docks on the Savannah river. Quarterman was employed by them as foreman of a gang of workmen. His home was in Savannah. While Quarterman was engaged in work for his employers on the northern side of the Savannah river, or the side furthest from the city of Savannah, other employees of Hunting & Company were loading a vessel on the southern side. To aid in this work staging had been erected, supported by a rope suspended from the vessel. While Quarterman and the men under him were at work on the northern side of the river the tide began to ebb, making it impracticable for them to continue their work until several hours had elapsed, and they proceeded to cross the river in a small boat. In landing they rowed to the vessel which was being loaded, with the intention of crossing the staging before mentioned, and thus getting out on the dock. Quarterman remained in the boat while several of the workmen got out on the staging, when the rope supporting the staging broke, precipitating

the staging upon Quarterman, inflicting injuries upon him from which he subsequently died. His widow brought suit against Hunting & Company, alleging that the staging, rope, and tackle were insecure and defective, that this was or should have been known by the defendants, and that Quarterman could not, in the exercise of ordinary care, have known that such was the case. On the trial the jury returned a verdict for the plaintiff for $3,000. The defendants made a motion for a new trial, which was overruled, and they excepted.

1. The point upon which this case mainly turns, and upon which most stress is placed by counsel for both the plaintiff and the defendants, is whether, under the evidence, Quarterman had the right to use the staging as a landing-place; or, in other words, to quote from the brief of counsel for the plaintiffs in error, " the pressure of the case . . is on the question whether Quarterman, in using the staging as a landing-place, was accepting an invitation of the plaintiffs in error, or was merely a licensee or trespasser." It seems clear that the staging was not designed for use as a landing-place; but it seems equally clear that as a matter of convenience similar staging on other vessels being loaded by the defendants was so used by their employees, that this was well known to the representatives of the defendants, and that no objection was made by them to the use of the staging for this purpose. There was also evidence which, if believed by the jury, would lead them to find that on the occasion of Quarterman's injuries the regular and usual landing-place for the workmen in the employment of the defendants was obstructed, and that it was necessary for them, in order to get on shore, to cross this staging. Quarterman, separated from the city of Savannah by the width of the Savannah river, was entitled, so far as it lay within the province of the defendants to provide him with the means of transit to and from his work, to rely on the reasonable safety of the means so provided; and if the ordinary landing-places were obstructed, and it was necessary for him to cross the staging in order to reach the dock, ordinary case and diligence were required of the defendants to see that the staging and its appurtenances were reasonably safe for the purposes to which they were, with their knowledge and approval, put. The case is somewhat analogous to that of an employee of a factory, to whom is owed, as an incident of the duty of

the master to provide a safe place to work, the duty to keep reasonably safe the means of ingress to and egress from the place where the work is done.    A careful reading of the evidence leads inevitably to the conclusion that there was ample warrant for a finding that the use of the staging by Quarterman as a landing-place was with the full knowledge and acquiescence of the defendants, if not that their own act rendered such use on this occasion necessary.    Knowing that the staging was likely to be put to this use by their employees from time to time, it was incumbent upon the defendants to exercise ordinary care and diligence for the safety of those who might pass over it.    *Bullard* v. *Southern R. Co.,* 116 *Ga.* 644.

2. The motion for a new trial as amended contains numerous grounds, but none of them disclose any error of sufficient importance to require a reversal of the judgment of the court below.    In one ground error is assigned on the admission of evidence as to a conversation between a witness and the mate of the vessel which was being loaded at the time Quarterman was injured; but as the evidence objected to was not set out in the motion, this court can not tell whether its admission was erroneous or not.    Error is assigned on the admission of other evidence, on the ground of irrelevancy; but it is not made to appear from the motion that the evidence, even if not material, was of sufficient importance to require the grant of a new trial; and in view of the certificate of the trial judge as to these grounds of the motion, it can not be said that they disclose any error.    It is complained that the court erred in charging the jury as follows: " If you find in this case for the plaintiff, the form of your verdict would be: 'We, the jury, find for the plaintiff,' and assess the damages at so much, naming a round sum." We can not agree with the contention of counsel for the plaintiffs in error that this was equivalent to instructing the jury that in the event they should find for the plaintiff their verdict should be for a substantial amount; and while the expression "round sum" was not altogether happy, we can not hold that it affords ground for a new trial.    Complaint is made of numerous other extracts from the judge's charge, but most of these have in effect been disposed of in the ruling made in the first division of this opinion. The charge was in the main accurate, and fairly presented the issues involved to the consideration of the jury.    There was abun-

dant evidence that the rope which supported the staging the fall of which caused the death of Quarterman was defective when it was furnished to the employees of the defendants; that its defective condition was called to the attention of their representative, who refused to furnish any other; and that Quarterman had nothing to put him on notice of this defect, and was wholly without blame. The verdict for the plaintiff was fully warranted, and the judgment overruling the motion for a new trial is

*Affirmed.    All the Justices concur.*