1730. WALDREP *v.* GEORGIA RAILROAD & BANKING COMPANY.

1. The undisputed evidence showing that the plaintiff's injury was received in a switch-yard of the railroad company, which was then being used for shifting its trains, the evidence was insufficient to support the inference that he had an implied invitation or license to use the railroad right of way (or path between the railroad tracks) which he was traversing. He was a mere trespasser, and, as such, not entitled to recover; because it did not appear that the engineer, or any other servant of the railroad company, was in any degree negligent or unmindful of his safety after his presence was discovered.

2. The statement of the engineer that the casualty might perhaps have been avoided if the train had not been so heavily loaded, and that the weight of the engine behind the train was the cause of his not stopping, does not raise the presumption that the defendant was guilty of negligence as to one whose presence was not known until the situation was such that the threatened injury could not have been averted. As to one whose presence was not reasonably to have been anticipated, the defendant had a right to move a train of any weight it saw fit; and, as the evidence for the plaintiff failed to show that the defendant was negligent after the plaintiff's danger was discovered, it was not error to award a nonsuit. The decision is controlled by the rulings in *Georgia R. Co.* v. *Fuller*, 6 *Ga. App.* 454 (65 S. E. 313), and *Grady* v. *Georgia R. Co.*, 112 *Ga.* 668 (37 S. E. 861).

Action for damages; from city court of Atlanta—Judge Reid. January 5, 1909.

Argued April 14, 1909.—Decided February 10, 1910.

*Burton Smith, Lawton Nalley,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

RUSSELL, J.   The principle that a railroad company can not in any case relieve itself from liability to a trespasser by showing merely that its servants and employees did not know of the presence of the trespasser, but in some cases must go further and show that there were no circumstances from which an ordinarily prudent person would have reason to anticipate his presence, as set forth in the rulings in *Crawford* v. *Southern Ry. Co.*, 106 *Ga.* 870 (33 S. E. 826), and *Ashworth* v. *Southern Ry. Co.*, 116 *Ga.* 635 (43 S. E. 36, 59 L. R. A. 592), was so strongly urged by the learned counsel for the plaintiff in error, that it is with considerable difficulty that we have been able to reach a decision in this case.   There was evidence that the point between the tracks where the plaintiff was injured was frequently used as a passageway by pedestrians; and, as is well said in the *Ashworth* case, supra, "If a railroad company expressly invites, or tacitly permits, persons to be upon its premises, or in or about its machinery, the company owes to such persons the duty not only not to injure them when their presence becomes known, but also to anticipate their presence at the time when or the place where such invitation or permission would probably bring about their presence, and to take such measures as ordinary prudence would require to prevent injury to them if they are in fact present. . . A railroad company which continuously permits persons to be upon its right of way or in or about its machinery at given times and places is put on notice by this conduct on its part that such persons may be present at such times and places; and by this conduct it imposes upon itself the duty not only to prevent injury to such persons, but to anticipate their presence and take the precautions of an ordinarily prudent person to prevent injury to them." The same rule is stated in *Harden* v. *Georgia Railroad Co.*, 3 *Ga. App.* 347 (59 S. E. 1122), and in *Macon & Birmingham Ry. Co.* v. *Parker*, 127 *Ga.* 471 (56 S. E. 616).   And generally it is for the jury to say whether the portion of the railroad track which is the locus of the injury is, or is not, so frequently used with the knowledge of the railroad company as a pathway by the public as to require the defendant's servants operating its trains to anticipate the presence of pedestrians at that particular point.   That it is a question for the jury to determine whether the locality where the casualty took place is such that the presence of pedestrians should there be anticipated is also ruled in *Ballard* v. *Southern Ry. Co.*,

116 *Ga.* 644 (43 S. E. 39), and in *Shaw* v. *Ga. R. Co.,* 127 *Ga.* 8 (55 S. E. 960). It is to be borne in mind, however, that these general rules have no application where the injury is received in the switch-yard of the railroad company. The inference that the railroad company has impliedly invited, or at least has impliedly licensed the public to pass along or across its tracks,—which may exist as to other portions of its right of way, and which at most is an exception by which a trespasser is raised to a licensee, can not be raised as to switch-yards, because such an inference is so inconsistent with the continuous use of its tracks for switching purposes as not to admit of the presumption that there is an invitation or permission granted by the railroad to the public. The cases relied on by counsel for the plaintiff in error, in which is stated the doctrine that invitation or license may be inferred from the fact that a railroad company has knowingly allowed a portion of its track or right of way to be used as a public pathway, are none of them cases in which the injury took place in a switch-yard. The Supreme Court and this court have both recognized that the peculiar use to which that portion of a railroad company's tracks included in its switch-yard is subjected is fatal to the creation of any inference which admits of joint occupancy at any time by any member of the public. Not only is the inference, which is itself in the nature of an exception, that a permissive use has been granted, defeated when it appears that the pedestrian braved the known and unusual dangers of a railroad switching yard, but even as physical precedents, the cases heretofore considered, and which must control us, were cases in which the injuries occurred in the same Georgia Railroad switch-yards. The cases of *Grady* v. *Georgia R. Co.,* 112 *Ga.* 668 (37 S. E. 861), and *Georgia R. Co.* v. *Fuller,* 6 *Ga. App.* 456 (65 S. E. 313), must properly control the decision in the present case.

The plaintiff says he started to cross the tracks of the defendant company at Moore street to Decatur street, and then proceeded along the latter street to his home. When he reached the Moore-street crossing a train of cars blocked the passage, and he concluded that he would have to wait some time before he could cross. In order to reach home sooner, he started down between the tracks of the railroad company, going east and in the direction of the Bell-street bridge, and had proceeded quite a distance in that direction before the injury occurred. He was aware of one train of cars on his left

being moved in the direction in which he was going and behind him. Becoming apprehensive, or being rendered nervous by this train, he veered somewhat to the track on his right, upon which it happened there was another train of cars, likewise moving in the same direction in which he was going, of the approach of which he was not aware, and by the tender of the engine of this second train he was knocked down and injured. He did not look behind him, and, as the engine was moving backwards with the tender in front, it can not even be said that the engineer saw him.

It appears, from all the evidence introduced in behalf of the plaintiff, that the portion of the tracks which he was traversing and where he was injured was constantly in use for switching purposes. There was a pathway at this point, used by some portion of the public as well as employees of the company, but the evidence clearly demonstrates that the use of the tracks in this locality was so continuous, both by day and by night, as to render passing extremely hazardous, and so unremitting as to preclude the inference that the railroad company had invited or licensed any·one to pass. Under every rule the plaintiff was a mere trespasser; and this is virtually conceded in the argument of his counsel. It appears in the evidence, however, that the reason the engineer gave, for not stopping the train in time to avoid injuring the plaintiff after discovering his presence, was that he had such a heavy load of cars behind him; and it is sought to argue, from this fact, that the injury was the result of wilful and wanton neglect after discovering the presence of a trespasser, or at least that it was a question for the jury to say whether or not this was so. Giving the language or admission of the engineer the construction most favorable to the plaintiff, it can not amount to more than that if the cars had not been so heavily loaded, the accident would not have occurred; and as the company did not owe Waldrep any duty in connection with the weight of its cars at this point, where his presence was not reasonably to have been anticipated, the circumstance that the cars alone prevented the engineer from stopping the train would in fact indicate that if the engineer had seen him he would have used ordinary care and diligence in attempting to stop the train. The language, however, would not support the inference that he saw the plaintiff, certainly not more strongly than the inference that his remarks were merely conjectural. Granting that the engineer could

have stopped the train if it had not been so heavily loaded, this would not be evidence of wilfulness or wantonness; and though the presumption of negligence which attaches to a railroad carrier, under §2321 of the Civil Code, extends to every specific act of negligence alleged in the petition, there is in this case no allegation that any servant of the defendant saw the plaintiff or was guilty of negligence after the plaintiff's presence and danger were known. Counsel for the plaintiff argues that if the train was so heavily loaded that it could not be stopped within a reasonable distance, no one knew this fact so well as the defendant, or its agents and servants, and it was for the jury to say whether it was negligence, wilful and wanton, under the particular circumstances of the case. The premise that no one knew better than the defendant's agents the weight of the train is well taken. But the conclusion can not be drawn therefrom that it was for the jury to say whether it was negligence, because the place was not such as that the presence of pedestrians could be anticipated in such a legal sense as to authorize the inference that they were presumptively present, and that thereby they were entitled to have accorded to them a higher degree of diligence than is due to trespassers. The railroad company owes a duty not to load its cars so heavily that the train can not be stopped within a reasonable distance, as much as it owes the duty not to run its train at an unusual speed at a place where the presence of pedestrians may be anticipated. But where the locality is such that the exclusive use of its tracks and right of way is required for the conduct of its business as a common carrier, in behalf of the public, and such (as in the case of switch-yards) that the inference of a license arising from the known use of its right of way by pedestrians is necessarily excluded, the extraordinary duties raised by the inference cease to exist. The only duty owing to this plaintiff was that due to a trespasser generally; and as the petition does not charge, nor the evidence show, that the defendant failed to use ordinary care for the plaintiff's protection after his presence was discovered, there was no error in awarding a nonsuit.

*Judgment affirmed.*