27868. GROVES *v.* SOUTHERN RAILWAY COMPANY.

DECIDED FEBRUARY 10, 1940.

*Lowndes Calhoun*, for plaintiff.

*Neely, Marshall & Greene, W. Neal Baird*, for defendant.

MACINTYRE, J. William Groves, by next friend, brought suit against Southern Railway Company claiming damages for the loss of his leg, alleged to have been caused by the negligence of the defendant. The judge granted a nonsuit and the plaintiff excepted.

It was held by the Supreme Court in *Grady v. Georgia Railroad & Banking Co.*, 112 *Ga.* 668 (37 S. E. 861) : "In a railroad yard in which there are several tracks in continuous use for the purpose of storing and switching cars and making up trains and the like,

and where the dangerous character of the place is manifest and obvious, there can be no implied license to the public to cross the tracks either through open spaces casually left between cars or under or over the cars. In order to render the company liable for injury caused to a person who was passing between two cars in such a yard, and whose presence and danger were unknown to the agents and employees of the company, there must be proof of an express license from the company." This court has said with reference to switch yards of a railway company: "These places are so extremely dangerous that to raise the presumption of a license would be to raise a very unnatural presumption. As the Supreme Court said in the similar case of *Central R. Co.* v. *Rylee,* 87 *Ga.* 491 (13 S. E. 584, 13 L. R. A. 634), 'The joint use by the company and by the public of the tracks at the same time would be so inconsistent and so dangerous that the law will not imply a license from the company to the public for such joint use.' As the court holds in that case, only express consent would serve to license a thoroughfare under such circumstances. In order that the railway company may fulfill its public functions,—that it may discharge its duty of serving the public promptly and efficiently, it must have places at which trains can be made up, and cars shifted promptly, speedily, and without the employees having to be on guard against the interference of those members of the public who have no business to be there. The courts of this State, therefore, while recognizing the rule that there may be places where persons by mere generality of user can acquire the rights of licensees, and thereby deserve a higher degree of care than trespassers, have never applied the rule to switch yards of the character of the one involved here." *Georgia Railroad & Bkg. Co.* v. *Fuller,* 6 *Ga. App.* 454, 457 (65 S. E. 313).

The late Chief Justice Russell of our Supreme Court, when he was a member of this court, said on this same subject: "Generally it is for the jury to say whether the portion of the railroad track which is the locus of the injury is, or is not, so frequently used with the knowledge of the railroad company as a pathway by the public as to require the defendant's servants operating its trains to anticipate the presence of pedestrians at that particular point. That it is a question for the jury to determine whether the locality where the casualty took place is such that the presence of pedestrians should be anticipated is also ruled in *Bullard* v. *Southern*

*Ry. Co.,* 116 *Ga.* 644 (43 S. E. 39), and in *Shaw* v. *Ga. R. Co.,* 127 *Ga.* 8 (55 S. E. 960). It is to be borne in mind, however, that these general rules have no application where the injury is received in the switch yard of the railroad company. The inference that the railroad company has impliedly invited, or at least has impliedly licensed the public to pass along or across its tracks,— which may exist as to other portions of its right of way, and which at most is an exception by which a trespasser is raised to a licensee, can not be raised as to switch yards, because such an inference is so inconsistent with the continuous use of its tracks for switching purposes as not to admit of the presumption that there is an invitation or permission granted by the railroad to the public." *Waldrep* v. *Ga. R. & Bkg. Co.,* 7 *Ga. App.* 342, 343, 344 (66 S. E. 1030).

The plaintiff in the instant case was playing golf in a sort of park lying near the railroad tracks of the defendant. He knocked a ball upon the tracks and went up to find it. He crossed several tracks, then started on the way back. As he reached the first or second track (the evidence is not clear which) he was struck by a freight car of the defendant. The witnesses differed as to whether he was struck by a kicked car or a car which had been struck and moved by a kicked car. The plaintiff contended that the point where the accident occurred was not a switch yard in the true sense of the word, and that there being some evidence to sustain the action it was error to grant a nonsuit.

It appears that the plaintiff was injured in a switch yard of the defendant. Alma Groves testified: "It was a regular railroad yard. [The place where the plaintiff was injured.] I have seen them switching cars there with switch engines for six years. I could stand on my porch and see every car coming in." James Warner testified: "There are about ten or twelve tracks starting from my side and going over to the yard office. They do not make up trains there. They use it for repairs. When the cars come from the Chevrolet plant, that's where we get that lumber from. That's what the cleaners are there for. The first track is liable to be full, and the cars are liable to be cleaned on the second track or the third track, and they use the rest of them to load cars going to the Chevrolet plant. I mean to say that No. 3 is sometimes used for cleaning, and that the rest of them are used for loading cars. They use switch engines when they come to get cars and carry them out,

and to move them up and down the tracks. There are cars moving in there in the mornings and in the evenings." Edward Groves testified: "I have seen switch engines and steam engines working in the yard there. Sometimes they do a lot of switching there. I don't know whether they have twelve tracks or not. . I never have counted them." Oscar Hart testified in effect that he did not know exactly how many tracks there were there, but that there were at least three or four, and as far as he knew it was a switching yard.

The only contradictory evidence was that of George Allen who stated that it was not a switching yard. However, the rest of his testimony discloses that there were eight or ten tracks there and that "they are supposed to come in there and switch them, but I tell you how they get them in there—they get way back here and kick them in. I have seen them do it time and time again. They don't pay no more attention to what is there than nothing in the world. . . I don't know whether they are switch engines or not. They have steam engines and they move the cars." Obviously Allen's testimony that the place of the injury was not a switch yard was a mere conclusion, for the remainder of his testimony conclusively shows, as does the testimony of the other witnesses, that the place in question was a switch yard.

It follows from the stated rules of law and the evidence in the instant case that the company owed the plaintiff no duty except not to hurt him wilfully or negligently after he was discovered or his danger was known. There was some evidence that at or near where the plaintiff was injured the railroad switch yard was frequently used by the public in crossing said yard. However, if we concede this to be true, under the rules above announced the plaintiff still could not recover, for there was no evidence to show that the plaintiff's presence in the switch yard was discovered or that his danger was known. We do not think the judge erred in granting a nonsuit.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*