## KIMBROUGH, executor, v. BOSWELL.

1. An agent is personally liable to those injured by his misfeasance or act of negligence, but ordinarily he is not liable for mere nonfeasance.
2. If the agent of the owner of land takes up stock trespassing on his principal's property, and if while impounded they are in the possession and under the control of the principal, and are damaged by the failure of the principal to give them the proper care and attention, the agent is not responsible for the injury thus caused.
3. In the present case the evidence left it uncertain as to whether the principal or the agent was in possession and control of the cattle after they were impounded, and this court will not interfere with the discretion of the trial judge in granting a second new trial.

Submitted November 26, — Decided December 10, 1903.

Action for damages. Before Judge Holden. Greene superior court. August 1, 1903.

Boswell was sued for damages alleged to have been sustained in consequence of failure to milk cows which he had impounded. In his answer he denied the plaintiff's allegations, and set up that the cows, when taken up by him, were trespassing on his wife's land, of which he was in control as her agent; that in impounding them he acted as her agent, and if there was any cause of action it was against her, and not against him; and that she was entitled to recoup damages on account of previous trespasses by the plaintiff's cattle. There were two trials of the case. On the second trial the plaintiff's son testified that the cows " got out on the 15th of December, 1900. Mr. Boswell impounded them on the 15th, and carried them to Siloam, up to his place, about three miles and a half. I heard of it Sunday night, the night of the 16th. I came to town the next day and saw him and inquired as to the damages they had done. He told me they had been on his cotton. . . He said they had damaged him by eating the cotton-bolls and trampling his land, and I couldn't get them except by paying him $10 faith money, and if they didn't get back on his place any more by May 1, he would refund the money. I told him I wouldn't do that. I would pay damages. . . The next morning I sent him $3.50 to pay for what the cows had eaten, and he sent them to me. When the cows got home (that was on Tuesday), they came up with their bags very much distended. I saw they were in bad shape and I had them milked right away and found the milk spoilt. It was bloody." There was other evidence tending to show damage as a result of failure to milk. The defendant testified: " These cows were taken up December 15, 1900. They were on my wife's land, and we carried them to Siloam and put them in the horse lot. We got there about dark Saturday evening. . . During the time the cows were at our house they were properly cared for. They were milked twice a day until Tuesday morning. We didn't milk them Tuesday morning; the boy got there and left with them about sun up. . . I took the cows up and kept them from damaging my land any further." There was other evidence tending to show that the cows were properly cared for. Mrs. Boswell testified: " I own the land on which the cows trespassed. My husband, E. T. Boswell, controlled said land in December, 1900, before and since. He had authority to take up stock running at large on it." The trial re-

sulted in a verdict for the plaintiff. The defendant made a motion for a new trial, which was granted, and the plaintiff excepted. The grounds of the motion for a new trial were, that the verdict was contrary to law and the evidence, and to specified parts of the charge of the court, and that the court erred in charging as follows: "If Mr. Kimbrough's cows were running at large on the land of Mr. Boswell's wife, and Mr. Boswell took the cows up, and if he kept them in his possession and control, individually or as her agent, and if he failed to exercise ordinary care and diligence in caring for and attending to the cows, and if the cows were damaged because of his failure to exercise ordinary care and diligence in caring for and attending to them by way of milking them, he would be liable for such damage."

*G. A. Merritt* and *James Davison*, for plaintiff, cited Civil Code, §§ 1772–6, 2894–2902, 3031, 3888; 72 *Ga.* 817.

*James B. Park* and *Samuel H. Sibley*, for defendant, cited 49 *Ga.* 207; 1 Am. & Eng. Enc. L. (1st ed.) 406; 1 Lawson's Rights, R. & P. 184.

LAMAR, J. While an agent is personally liable to those injured by his misfeasance, he is not ordinarily liable for mere nonfeasance. *Reid* v. *Humber*, 49 *Ga.* 208; Civil Code, §§ 3041, 3029. And if, in the present case, the husband was the agent of the wife and authorized to take up cattle trespassing upon her land, she would be responsible for any injury resulting from a failure to give them the proper care and attention demanded by the Civil Code, § 1775, if they were in her possession and control after they were taken up on December 15th. The charge of the court properly submitted to the jury the question as to whether the husband or the wife was in possession and control. But the verdict was not demanded, the evidence on this point being uncertain, as well as conflicting on the issue whether the cows had been damaged as a result of a failure to milk, or from being driven too fast on being carried back to the plaintiff. The record is silent as to whether the property in which they had been impounded belonged to the husband or the wife; and the question as to who had them in control being material, we can not say that the judge abused his discretion in granting a second new trial.

*Judgment affirmed. All the Justices concur.*