## 6938. SOUTHERN RAILWAY COMPANY v. SEWELL.
## 6939. WAITT v. SEWELL.

1. One who undertakes to operate as a conductor a train of passenger-cars for a railway corporation owes a duty not only to his principal, but also to the passengers on the train and to the general public; and if, while conducting such a train from one point to another, he fails to perform a duty thus arising, and in consequence another person is injured, his failure to perform the duty will amount to a misfeasance, for which he will be individually liable.

(a) The allegations in the petition set forth a cause of action against both of the defendants, and the court did not err in overruling the demurrer and refusing to dismiss the case.

2. An action brought in this State by a resident plaintiff against a non-resident railway corporation and one of its servants who is a resident of this State, jointly, to recover damages in excess of $3,000 on account of alleged personal injuries to the plaintiff, in which the petition states a prima facie case of joint and concurrent liability against the defendants, involves no separable controversy between the plaintiff and the non-resident defendant which would entitle the latter to remove the cause on that ground to the Federal court.

3. A foreign railroad company operating in this State and a conductor in its employment may be jointly sued as joint tort feasors in a county in which the company has and maintains an agent and an agency, when the cause of action originated outside the State, even though the residence of the conductor be in another county in this State.

4. The court erred in admitting, over objection by the plaintiff, testimony of an engineer of the defendant as to certain statements made to him by the conductor, some time after the alleged happening of the event, as to the time when he was first informed of the perilous position the plaintiff had occupied, and that this information did not reach him until after the plaintiff had fallen from the moving train. The testimony was clearly hearsay and not a part of the res gestæ.

5. The first grant of a new trial will not be set aside unless it appears that the judge abused his discretion therein and the verdict returned was demanded; and it can not be said in this case that the verdict was demanded.

6. The remaining grounds of the motion for a new trial are without substantial merit. The issues were fairly presented in the charge of the court, and there was no timely request in writing for any fuller or more specific instructions.

DECIDED SEPTEMBER 21, 1916.

Action for damages; from city court of Carrollton—Judge Beall. August 19, 1915.

*J. O. Newell, B. F. Boykin, Maddox, McCamy & Shumate,* for plaintiffs in error. *Roop & Fielder, Atkinson & Born,* contra.

WADE, C. J.  Through his next friend, Horace A. Sewell, a
minor, brought a joint suit for personal injuries against the South-
ern Railway Company, a common carrier, domiciled without the
State of Georgia, but running trains therein through the county
of Carroll, where it had an agent and maintained an agency and
place of business, and against Malcolm G. Waitt, a conductor of
said railway company, in charge of the passenger-train, from
which the plaintiff fell and was injured on January 14, 1914.
The plaintiff alleged, in brief, that on the day named he went to a
station on the line of said railway company at Fruithurst, Ala-
bama, for the purpose of boarding a passenger-train of said com-
pany, running from Atlanta, Georgia, by said station, to Anniston,
Alabama; that, being informed by the agent of the company that
no tickets were sold for this particular train at this station, as it
was a flag station only, but that he might become a passenger and
pay his fare on the train without additional charge because of his
failure to secure a ticket, he remained there until the train ap-
proached the station and stopped to discharge and receive pas-
sengers; that he approached the train from the side where he had
previously boarded trains at this station, but, finding the vestibule
doors closed on that side, he immediately ran around the rear of
the train, in the effort to reach the door open on that side before
the train commenced to move, but before he reached the steps and
entered the train it started off, and, in his anxiety to continue his
journey, he seized the hand-hold, placed on each side of the steps
to enable passengers to enter the car, and undertook thus to board
the moving train; that when too late to safely relinquish his hold
and alight on the ground, he discovered that the vestibule doors,
where he was endeavoring to enter, were fast closed, and he hung
on in desperation, until ultimately, from cold and fatigue, some
minutes thereafter, his grip relaxed and he fell to the ground
while the train was in rapid motion and was seriously injured;
that while he was hanging to the vestibule doors a number of pas-
sengers on the train, including one Will Gentry, notified the por-
ter, the flagman, the ticket collector, the special conductor in
charge of the rear coach of the train (who were unknown to the
plaintiff by name or otherwise), and the said Malcolm G. Waitt,
the conductor of the train, whose duty it was to control the run-
ning and operating of the train, of the dangerous position in which

the plaintiff was placed; that certain servants of the defendant came and looked at him through the glass door of the vestibule, still hanging to the side of the vestibule, and each in turn notified the conductor of his perilous situation, but, notwithstanding his and their demand that the door be opened, the conductor refused to open it, and permitted the plaintiff to remain hanging in this dangerous position until ultimately he fell off as aforesaid; that both the railway company and the conductor were negligent, in that, having full knowledge of the danger to which he was exposed in consequence of his attempt to enter the train in the manner and by the means aforesaid, with ample opportunity to stop the train or to admit him into the vestibule of the car he was seeking to enter, before his strength became exhausted and before he fell as aforesaid, they chose nevertheless to refuse to relieve him in either manner or to give orders so that he might be relieved; that the casualty occurred in winter, during bitterly cold weather, but, notwithstanding this fact and notwithstanding the knowledge of the defendants of his perilous situation after he had fallen from the train, they permitted him to lie there for three hours or more, helpless and exposed to the cold. The petition alleged that the defendants were liable to the plaintiff in consequence of their joint and concurrent negligence as set forth therein, and set out the nature and character of his injuries, his earning capacity, etc., and prayed for damages in the sum of $100,000.

The petition was demurred to generally by the Southern Railway Company; and a special demurrer, on the ground that an allegation therein as to the expense incurred for medical treatment, etc., was not sufficiently definite and full, was likewise filed. The plaintiff struck from his petition all reference to hospital expenses, and the court thereupon overruled the general demurrer. The defendant Waitt interposed the same demurrer, with the additional ground that from the allegations of the petition it appeared that the city court of Carrollton had no jurisdiction of him, but that the superior court of Fulton county alone had such jurisdiction. This demurrer was likewise overruled.

The Southern Railway Company filed a petition for removal to the Federal court, insisting that no cause of action was set out against Malcolm G. Waitt individually, as no acts of misfeasance on his part were alleged, sufficient to charge him individually with

liability for the plaintiff's injury, but that the cause of action set
out in the petition was solely against the Southern Railway Com-
pany, a foreign corporation; that the cause of action set out
in the petition was a separable controversy, as between the South-
ern Railway Company and the said Waitt, in that the negligence
alleged against Waitt was predicated solely upon his individual
conduct, whereas the negligence alleged against the railway com-
pany was predicated upon the conduct of Waitt and the defend-
ant's other agents and employees, to wit, the porter, the flagman,
the ticket collector, etc. The court denied the petition for re-
moval.

The trial of the case resulted in a verdict for the defendants. A
motion for a new trial was made by the plaintiff and was granted
by the court. The motion for a new trial was based upon the gen-
eral grounds, and also upon several special grounds, in which it
was contended that the trial judge, in his charge to the jury,
omitted to instruct them sufficiently as to the degree of care which
the defendants owed to the plaintiff, and also to instruct them
specifically touching the alleged negligence in permitting the
plaintiff to remain without succor for such a long period of time
where he had fallen from the moving train. It was also com-
plained that the court erred in admitting certain testimony from
the engineer of the defendant company, touching a statement
made to him by the conductor as to the time when the plaintiff
fell from the train and when notice of his perilous position was
brought to the attention of the said conductor.

The defendants separately excepted to the grant of the motion
for a new trial, as well as to the overruling of their demurrers,
and the two cases are considered together, inasmuch as they raise
the identical points, with the exception of the question of removal
to the Federal court presented by the Southern Railway Company.

1. The first question that logically presents itself for determi-
nation is whether or not the petition sets out any individual liabili-
ty on the part of the servant or agent who is sued jointly with the
master. If the servant could not be held individually liable for
the resulting injury to the plaintiff, the suit would be merely a
suit against the master, the Southern Railway Company; and, that
company not being a domestic corporation, and the amount in-
volved being more than $3,000, the case would be removable upon

proper application.  Again, if the cause of action was clearly separable, the foreign corporation would be entitled to removal upon complying, as it did, with the requirements of the statute.

"The wrongful acts of a servant may render him personally liable to a third person injured thereby.  The earlier cases which are still adhered to in many jurisdictions limited the servant's liability to his acts of misfeasance as distinguished from nonfeasance, but this distinction has been repudiated in some States and the servant held liable for acts of nonfeasance as well as misfeasance." 26 Cyc. 1543 (5).  See also 2 Cooley on Torts, 1171. The following rule is laid down in 20 Am. & Eng. Enc. Law, 52: "The servant is not, in general, liable to third persons for his own nonfeasance in the course of his employment.  If he neglects to perform a duty which the master owes to third persons, the remedy is against the master and not against the servant.  The servant's liability under these circumstances is solely to his master, there being no privity between him and such third persons.  Where, however, the servant is guilty of actual misfeasance or tort, resulting in injury to a third person, the servant as well as the master will be liable."  The distinction between nonfeasance and misfeasance as affecting the liability of an agent to third person is clearly stated in 2 Clark & Skyles on the Law of Agency, 1299, as follows: "As has been stated above, there is a distinction between nonfeasance and misfeasance or malfeasance; and this distinction is often of great importance in determining an agent's liability to third persons.  By reason of some of the cases failing to clearly notice this distinction there has been some confusion in the decisions on this point.  In this connection, nonfeasance means the total omission or failure of an agent to enter upon the performance of some distinct duty or undertaking, which he has agreed with his principal to do; misfeasance means the improper doing of an act which the agent might lawfully do, or in other words, it is the performing of his duty to his principal in such a manner as to infringe upon the rights and privileges of third persons; and malfeasance is a doing of an act which he ought not to do at all."  It is said further by the same authority:  "If an agent undertakes to perform certain acts for another and he refuses or fails to enter upon such performance, it is a nonfeasance; but if he once begins the performance of such acts and in doing so fails or omits to do

certain acts which he should have done, whereby a third person is injured, it is not a nonfeasance, but a misfeasance. Misfeasance may involve the omission to do something which it is his duty to do under the circumstances, as when he does not exercise that degree of care which due regard for the rights of others requires. As has been said: 'If an agent never does anything towards carrying out his contract with his principal, but wholly omits or neglects to do so, the principal is the only person who can maintain an action against him for the nonfeasance, but if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequences of his acts; and he can not, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from the liability to any person who suffers injury by reason of having left them without proper safeguards. This is not nonfeasance or doing nothing, but it is misfeasance, doing improperly.' Osborne v. Morgan, 130 Mass. 102, 39 Am. Rep. 437." Ib. 1300, 1301.

If nonfeasance be held to apply only to cases where the agent fails to enter upon the performance of his contractual obligations, and not the cases where he has in fact entered upon such performance but neglected his duties in some respects, and thereby injury or damage results, the confusion as to the meaning of these two words in cases like the one under review would not arise. 2 Clark & Skyles on the Law of Agency, 1303. The rule laid down in 31 Cyc. 1559 appears to us to furnish a test for determining whether or not an agent or servant may be held responsible to a third person for an injury resulting from his failure to perform some duty which is required by his obligation to his master. "An agent is liable to third persons for his own torts in like manner as other persons, his liability being neither increased nor decreased by the fact of his agency. A distinction exists, however, between the liability of an agent to third persons for nonfeasance, or the breach of a duty owed only to his principal, and his liability for misfeasance or malfeasance, or the breach of a duty owed to third persons. An agent is not responsible to a third person for injury resulting from nonfeasance, meaning by that term the omission of the agent to perform a duty owed *solely* [italics ours] to his prin-

cipal by reason of his agency. While an agent is not liable to third persons for injury resulting from his omission to perform a duty owed to the principal alone, he is liable to them for injury resulting from his misfeasance or malfeasance, meaning by those terms the breach of a duty owed to third persons generally, independent of the particular duties imposed by his agency. Accordingly an agent may be held liable in damages to third persons for conversion, fraud and deceit, and even for negligence." 31 Cyc. 1559, 1560, 1561, 1562.

Special attention is directed to the statement that while an agent is not responsible to third persons for injury resulting from nonfeasance, the meaning of the term "nonfeasance," in this connection, is confined to the omission by the agent to perform a duty which he owes *solely* to his principal by reason of his agency. In other words, if the injuries arise on account of his failure to perform a duty which he has undertaken to perform by virtue of a contract with his principal, but which nevertheless (when once so undertaken) involves obligations on his part to third persons or to the public generally, he must perform the duty, which is not in that case *solely* to his master, in such a way that injury may not result to third persons on account of negligent, reckless, or wanton failure on his part to carry out and perform the duties he has so undertaken to perform. For instance, in the case under consideration, the conductor was under contract to operate the train of the railway company between certain points on its line, on certain days or during certain periods. Had he failed altogether to take charge of the train on any particular day or date as required by his contract with the railway company, and in consequence of his failure to perform his contractual obligation the train had departed on its journey in charge of some flagman or other underling, through whose incompetency injury resulted to passengers thereon or to the general public, or if, on account of a breach of his contract, the departure of the train was delayed and damage thus resulted to any patron of the railway company, the persons injured would have no right of action against him, but the master alone might call him to account for the breach of his contract. He would be guilty of nonfeasance, in that he had failed to perform a duty which he owed solely to the master; that is, the duty of running and operating the train of the master in accordance with the con-

tract between himself and the master.  On the other hand, where a conductor undertakes to operate the train in compliance with his obligation to his master, but in its operation neglects to observe that degree of care and caution required of him, or improperly performs some duty, and injury results to a third person thereby, the injured person has a right of action against him as well as against the master, because the negligent performance of the duty undertaken amounts to more than nonfeasance, and may properly be characterized either as misfeasance or malfeasance.

The railway conductor in the case under consideration was under a duty solely to his master until he actually took charge of one of the railway trains of the master and thereby began to operate it for the master; but thereafter he owed a duty to the general public as well as to other employees and passengers on the train, and even to trespassers upon the train or on the track, under some circumstances.  While running the train the conductor was in the performance of a duty which exacted from him a due regard for the rights and safety of the public; and it can not be said that he would incur no personal or individual liability, if, on account of his failure to perform his duty towards the general public, injury resulted to one of that public, even though the injured person was at fault.  It was alleged, and there was some evidence to show, that after the discovery of the plaintiff's presence in a perilous position, notice of the fact was brought home to the conductor in charge of the train, and the conductor failed either to make any effort to stop the train or to open the vestibule doors and thus prevent the consequences which ensued to the plaintiff.  It is true, the plaintiff voluntarily assumed the dangerous position in which he was found, and neither the railway company nor the conductor could have been held liable for any injury to him resulting from his action in placing himself in such a position *until* the fact of his presence was discovered, but then, if either through wanton negligence or from a careless disregard for his safety, nothing was done to remove him from his place of peril, which would measure up to the standard of ordinary care, both the railway company and its conductor could be held liable.  In *Southern Railway Co.* v. *Grizzle*, 124 *Ga.* 735 (53 S. E. 244, 110 Am. St. R. 191), the Supreme Court held: "An agent is not ordinarily liable to third persons for mere nonfeasance.  *Kimbrough* v. *Boswell*, 119 *Ga.*

201 (45 S. E. 977). An agent is, however, liable to third persons for misfeasance. Nonfeasance is the total omission or failure of the agent to enter upon the performance of some distinct duty or undertaking which he has agreed with his principal to do. Misfeasance means the improper doing of an act which the agent might lawfully do; or, in other. words, it is the performing of his duty to his principal in such a manner as to infringe upon the rights and privileges of third persons. Where an agent fails to use reasonable care or diligence in the performance of his duty, he will be personally responsible to a third person who is injured by such misfeasance. The agent's liability in such cases is not based upon the ground of his agency, but upon the ground that he is a wrong-doer, and as such he is responsible for any injury he may cause. When once he enters upon the performance of his contract with his principal, and in doing so omits, or fails to take reasonable care in the commission of some act which he should do in its performance, whereby some third person is injured, he is responsible therefor to the same extent as if he had committed the wrong in his own behalf. See 2 Clark & Skyles on Agency, 1297 et seq. Misfeasance may involve also to some extent the idea of not doing; as where an agent engaged in the performance of his undertaking does not do something which it is his duty to do under the circumstances, or does not take that precaution or does not exercise that care which a due regard to the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual in common with all other members of society." In that case the court said further: "The engineer having once undertaken in behalf of the principal to run the train, it was incumbent upon him to run it in the manner prescribed by law; and a failure to comply with the law, although it involved an act of omission, was not an act of mere nonfeasance, but was an act of misfeasance." "The rule is quite commonly stated to be that [a servant] is liable for misfeasance, but not for nonfeasance. In a few cases this rule seems to be strictly and logically applied, but the practical result of this would be to free the servant from liability for almost all acts of negligence. In some of the recent and better considered cases, the soundness of this distinction is

denied; but in a far greater number of instances, while the distinction is apparently recognized, it is in effect rejected by the limited meaning ascribed to the terms. . . The doctrine that a servant is liable for misfeasance, but not for nonfeasance, fails to distinguish the liability arising from contract from that springing from tort. If the injury results from breach of contract due to the nonfeasance of a servant, manifestly the servant would not be liable to the person injured. . . We think the term nonfeasance refers to the omission on the part of the agent to perform a duty which he owes to his principal by virtue of the relationship existing between them; but, whenever the omission on the part of the agent consists of his failure to perform a duty which he owes to third persons, then, as to such third persons, his omission amounts to 'misfeasance,' for which he is responsible. Again the distinction has been pointed out in these words: 'Nonfeasance is the total omission or failure of the agent to enter upon the performance of some distinct duty or undertaking which he has agreed with his principal to do. Misfeasance means the improper doing of an act which the agent might lawfully do; or, in other words, it is the performing of his duty to his principal in such a manner as to infringe upon the rights and privileges of third persons.'" 7 Labatt's Master & Servant, 7968, 7973, 7976, 7977.

The doctrine that where one knowingly and voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking such risk amounts in itself to a failure to exercise ordinary care and diligence for his own safety, he can not recover therefor although the injury be in part attributable to the negligence of the defendant (*City of Columbus* v. *Griggs,* 113 *Ga.* 597, 38 S. E. 953, 84 Am. St. R. 257), we do not think is exactly applicable (*or at least is not controlling*) in the case under consideration. In the case last cited the deceased lost his life in attempting to travel on a dark night over a certain street rendered unsafe by reason of certain work being therein done by a railway company by the permission of the city, there being full knowledge of the condition of the street and of the danger in attempting to travel the same on the part of the deceased, and no excuse or emergency existing which constrained him to attempt its passage. There, notwithstanding the negligence of the city with reference to the street, the Supreme Court held that no recovery was authorized.

This case falls rather under a different class of cases, as, for instance, where a trespasser is injured on a railroad track after his presence has been discovered by the engineer, and where, notwithstanding the fact that the trespasser has placed himself in a position of obvious danger, the engineer in charge of the train might by the exercise of ordinary care, after discovery of his presence in the perilous position, prevent the infliction of any injury upon him. *Central of Georgia Ry. Co.* v. *Pelfry,* 11 *Ga. App.* 119 (74 S. E. 854). It has been often held that no recovery can be had for injury to one trespassing on the tracks of a railroad company when the employees of the company did not know and had no reason to anticipate his presence at the time when and the place where he was injured or killed. *Raden* v. *Georgia Railroad,* 78 *Ga.* 47; *Central R. Co.* v. *Smith,* 78 *Ga.* 694 (3 S. E. 397); *Smith* v. *Central R. Co.,* 82 *Ga.* 801 (10 S. E. 111); *Wilds* v. *Brunswick &c. R. Co.,* 82 *Ga.* 667 (9 S. E. 595); *Parrish* v. *W. & A. R. Co.,* 102 *Ga.* 285 (29 S. E. 715, 40 L. R. A. 364). "Ordinarily a railway company owes such a one no duty except not to injure him wilfully or wantonly, or, to express it somewhat differently, *to use ordinary care* [italics ours] for his safety after his presence in a perilous position has been discovered." *Central Ry. Co.* v. *Pelfry,* supra. See also *Kendrick* v. *Seaboard Air-Line Ry.,* 121 *Ga.* 775 (49 S. E. 762); *Gulf Line Ry. Co.* v. *Way,* 137 *Ga.* 109 (72 S. E. 917). But, as was said in the *Pelfry* case, "While the rule is well settled that in case of the death of a trespasser, recovery can be had only where the homicide was the result of wanton or wilful conduct on the part of the servants of the defendant, it is a mistake to assume that the homicide must be shown to have been intentional in point of fact; for if the conduct of the defendant's servants was so reckless as to evidence an utter disregard of consequences, the law would imply wilfulness and an intention to do the wrong. *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1030 (53 S. E. 692, 6 L. R. A. (N. S.) 283, 4 Ann. Cas. 675)." In the case under consideration, if the conductor, the servant of the railway company in charge of the train, was in fact advised of the perilous situation of the plaintiff in time to prevent the resulting injury, and nevertheless, in wanton or utter disregard of the consequences, failed to use ordinary care for his safety, such failure would amount to a misfeasance on his part, rendering him individually liable, and the master liable also.

2. Since, under our ruling·above, the conductor (if the testimony for the plaintiff be believed rather than the testimony for the defendant) was guilty of misfeasance, and could therefore be held individually liable, the joint suit brought against him and against the railway company was not a separable controversy, and therefore the court did not err in declining to grant the petition for the removal to the Federal court. "An action brought in a State court by a resident plaintiff against a non-resident railroad corporation and certain of its servants, some of whom are residents, jointly, to recover damages in excess of $2,000 [now $3,000 (Hopkins Judicial Code, § 30)] on account of alleged personal injuries to the plaintiff, involves no separable controversy between the plaintiff and the non-resident defendants, entitling the latter to remove the cause on that ground to the circuit court of the United States, where the declaration states a prima facie case of joint and concurrent liability against all of the defendants." *Louisville & Nashville R. Co.* v. *Roberts,* 136 *Ga.* 270 (74 S. E. 425). "A railway corporation can be jointly sued with three of its servants, when it is sought to make the corporation liable only by reason of the negligent acts of its said servants in the operation of a train under·their management and control. . . The right of removal to the Federal court, under the acts of Congress of March 3, 1887, and August 13, 1888, depends upon the state of the pleadings and the record at the time of the application for removal. If, upon the face of the declaration,—the only pleading filed in the case,—the action is joint, for the purpose of determining the right of removal the cause of action must be deemed to be joint. 'A defendant has no right to say that an action shall be several which a plaintiff elects to make joint.'" *Southern Ry. Co.* v. *Miller,* 1 *Ga. App.* 616 (57 S. E. 1090). See also Chesapeake & Ohio Ry. Co. v. Dixon, 179 U. S. 131 (21 Sup. Ct. 67, 45 L. ed. 121); Alabama Great Southern Ry. Co. v. Thompson, 200 U. S. 206 (26 Sup. Ct. 161, 50 L. ed. 441, 4 Ann. Cas. 1147); Southern Ry. Co. v. Miller, 217 U. S. 209 (30 Sup. Ct. 450, 54 L. ed. 732). "An action which is brought in a State court by a resident plaintiff against a non-resident railroad corporation and its resident servants jointly, to recover damages in excess of $2,000 [now $3,000 (Hopkins Judicial Code, § 30)] for the homicide of the plaintiff's son, involves no separable controversy between the

plaintiff and the defendant corporation, entitling the latter to remove the cause on that ground to the circuit court of the United States, where the declaration states a prima facie case of joint and concurrent liability against all of the defendants; and this is true even though a servant of the company participating in the alleged acts of negligence is not a party to the case." *Vanzant* v. *Southern Ry. Co.,* 135 *Ga.* 444 (69 S. E. 721).

The pleadings in this case plainly alleged joint liability, and, measured by the rule laid down in Chesapeake & Ohio Ry. Co. *v.* Dixon, supra, that "when concurrent negligence is charged, the controversy is not separable, and as the complaint in this case, reasonably construed, charged concurrent negligence, the court declines to hold that the State courts erred in retaining jurisdiction," it is evident that the trial judge did not err in refusing the petition for removal. "A defendant has no right to say that an action shall be several which a plaintiff elects to make joint." Louisville &c. R. Co. *v.* Ide, 114 U. S. 52 (5 Sup. Ct. 735, 29 L. ed. 63).

3. Joint tort-feasors may be sued in this State in the county of the residence of either. Article 6, section 16, paragraph 4, of the Constitution of Georgia (Civil Code, § 6541). It was alleged that the railway company maintained an office, agent, and agency in Carroll county, and that service was perfected upon its agent. Since the railway company was a non-resident of this State, the action against it could be located in any county in which it had and maintained an agency. "An act of the General Assembly of Georgia, which establishes jurisdiction of suits against railroad companies, and prescribes that suits for damages for injuries to person or property shall be brought in the county in which the cause of action originated, if the company has an agent in such county; if not, then in the county of the residence of the company, refers to causes of action originating in the counties of this State, and does not apply to causes of action originating outside the limits of the State. As to the latter, the law in force at the time of the passage of the act is not affected by its terms." *South Carolina & Ga. R. Co.* v. *Dietzen,* 101 *Ga.* 730 (29 S. E. 292). In the *Grizzle* case, supra, it was held that "A foreign railroad company operating in this State and an engineer in its employment may be jointly sued in the county in which the cause of

action originated, even though the residence of the engineer be in another county in this State." It has been held that "A foreign corporation doing business in this State and having agents located therein for this purpose may be sued and served in the same manner as domestic corporations, upon any transitory cause of action whether originating in this State or otherwise; and it is immaterial whether the plaintiff be a non-resident or a resident of this State, provided the enforcement of the cause of action would not be contrary to the laws and policy of this State." *Reeves* v. *Southern Ry. Co.,* 121 *Ga.* 561 (49 S. E. 674, 70 L. R. A. 513, 2 Ann. Cas. 207); Civil Code, § 4101; *Bracewell* v. *Southern Ry. Co.,* 134 *Ga.* 537, 540 (68 S. E. 98); *Bell* v. *N. O. &c. R. Co.,* 2 *Ga. App.* 812, 817 (59 S. E. 102); *Wright* v. *Southern Ry. Co.,* 7 *Ga. App.* 542 (67 S. E. 272), and cases there cited. Under decisions cited above, it is clear that this suit could be instituted aganist the railway company, as a joint tort-feasor, in any county in which that company maintained an agency, and that the plaintiff was not constrained to bring his suit in the county in which the other defendant resided, where the cause of action did not originate in a county of this State, but originated in another State.

4. The court erred in admitting the testimony of the engineer as to a statement made to him some minutes after the fall of the plaintiff from the train had been brought to the conductor's attention. This statement was clearly hearsay and was not admissible as a part of the res gestæ.

5. In the light of what has already been stated, it is unnecessary to discuss further the question whether the petition set forth a right of action on the part of the plaintiff, notwithstanding his admitted negligence in assuming an obviously dangerous position. From a careful review of the record, we can not hold that as a matter of law the verdict returned by the jury was demanded, and that therefore the trial judge abused his discretion in granting a first new trial. It was for the jury to determine whether or not the alleged notice to the conductor reached him in time to afford him an opportunity, by the exercise of ordinary diligence and care, to preserve the safety of the plaintiff, and whether or not he failed or refused to act with sufficient promptitude when the notice was received, and whether if he did refuse or fail to so act,

such refusal was wanton and showed a want of ordinary care and a reckless disregard of consequences. These issues, it is true, were presented at the trial of this case, and the jury, in finding for the defendants, apparently passed thereon, but it was within the power of the presiding judge to set aside the finding of the jury by a first grant of a new trial, notwithstanding the existence of some evidence to support it. The law vests in him this discretion, and where the verdict was not clearly demanded by the evidence, we can not say that such discretion has been abused. Whether or not another jury will take the same view can not be a matter of concern to us.

6. The remaining grounds of the amendment to the motion for a new trial complain of the failure of the trial judge to give certain instructions to the jury. We think the charge as given sufficiently covered the contentions referred to, in the absence of any timely written requests for other and fuller or more specific instructions.

Viewing the case as a whole, we see no reason to set aside the judgment granting the motion for a new trial.

*Judgment affirmed.*