## 23077. ATLANTIC COAST LINE RAILROAD COMPANY v. KNIGHT.

DECIDED NOVEMBER 27, 1933.

W. B. Gibbs, Wilson, Bennett & Pedrick, for plaintiff in error. Highsmith & Highsmith, W. G. Thomas, contra.

GUERRY, J. (After stating the foregoing facts.) A decision of this case involves the determination of only one question. That question may be stated thus: Does the petition, which is brought against the Atlantic Coast Line Railroad Co. and B. C. Poppell, a section foreman of said company, state a cause of action against B. C. Poppell, the foreman, on which he can be held individually liable? If no cause of action is set out against B. C. Poppell, the resident defendant, the Atlantic Coast Line Railroad Company, the nonresident defendant, has the right to remove the case to the proper Federal court, as being a controversy solely between citizens of different states. "Where a nonresident corporation and its resident employee are joined as defendants in a suit filed in a

State court, the corporation may remove the case to the proper Federal court if the petition states no cause of action against the individual resident employee." *Pan American Petroleum Corp.* v. *Williams,* 45 *Ga. App.* 490 (165 S. E. 473) ; Plunkett v. Gulf Refining Co., 259 Fed. 968 (2) ; Clark v. Chicago &c. R. Co., 194 Fed. 505; Marach v. Columbia Box Co., 179 Fed. 412; Chicago &c. Ry. Co. v. Stepp, 151 Fed. 908; Floyt v. Shenango Furnace Co., 186 Fed. 539. In Lane v. Cotton (1701), 12 Mod. 488 (88 Eng. Reprint, 1466), in which the Postmaster-General was held liable for loss of exchequer bills from a letter after it had been deposited in the receiving office, Lord Holt, in a dissenting opinion, said: "It was objected at the bar that they have this remedy against Breese (who was apparently the clerk from whose possession the loss occurred). I agree, if they could prove that he took out the bills, they might sue him for it; so they might anybody else on whom they could fix that fact; but for a neglect in him they can have no remedy against him; for they must consider him only as a servant; and then his neglect is only chargeable on his master, or principal; for a servant or deputy, quatenus such, can not be charged for neglect, but the principal only shall be chargeable for it; but for a misfeasance an action will lie against a servant or deputy, but not quatenus as deputy or servant, but as wrong-doer." Upon this decision text-writers and the majority, if not all, of the State courts, founded the rule that a servant is liable for misfeasance, but is not ordinarily liable for nonfeasance.

Judge Story, in his work on Agency, founded the following statement on what he calls Lord Holt's celebrated judgment in Lane v. Cotton, supra: "The agent is also personally liable to third persons for his own misfeasances and positive wrongs. But he is not, in general (for there are exceptions), liable to third persons for his own nonfeasances or omissions of duty, in the course of his employment. His liability, in these latter cases, is solely to his principal, there being no privity between him and such third persons, but the privity exists only between him and his principal. And hence the general maxim as to all such negligences or omissions of duty is, in cases of private agency, 'respondeat superior.'" "The distinction, thus propounded, between misfeasance and nonfeasance, between acts of direct, positive wrong, and mere neglects by agents as to their personal liability therefor, may seem nice and artificial,

and partakes perhaps not a little of the subtlety and overrefinement of the old doctrines of the common law. It seems, however, to be founded on this ground: that no authority whatsoever from a superior can furnish to any party a just defense for his own positive torts or trespasses, for no man can authorize another to do a positive wrong. But in respect to nonfeasances or mere neglects in the performance of duty the responsibility therefor must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other, and no man is bound to answer for any such violations, except those to whom he has become directly bound or amenable for his conduct." The Supreme Court of this State in *Reid* v. *Humber,* 49 *Ga.* 207, adopted and sanctioned this rule of law. This case was cited in *Kimbrough* v. *Boswell,* 119 *Ga.* 201 (45 S. E. 977), where it was held: "While an agent is personally liable to those injured by his misfeasance, he is not ordinarily liable for mere nonfeasance."

However, this rule has been criticized and limited by many text-writers. In 1 Jaggard on Torts, 288, 289, it is said: "The thinness and uncertainty of the distinction between the misfeasance, malfeasance, and nonfeasance leaves an exceedingly unstable basis on which to rest an important principle of liability. It would, indeed, seem to be a fair criticism on the subsequent reasoning that the courts have, in applying the distinction, engaged in a solemn game of logomacy. Thus, in Bell *v.* Josselyn (1855), 63 Am. Dec. 741 [3 Gray (Mass.), 309], it was said that failure of the defendant to examine the state of the pipes in a house before causing the water to be let on, would be a nonfeasance, but, if he had not caused water to be let on, that nonfeasance would not have injured the plaintiff. If he had examined the pipes, and left them in a proper condition, and then caused the letting on of the water, there would have been neither nonfeasance nor misfeasance. As the facts were, the nonfeasance caused the act done to be a misfeasance. The plaintiff suffered from the act done, which was no less a misfeasance by the reason of its being preceded by a nonfeasance. . . The futility of such reasoning on the word 'nonfeasance' appears fully from the lack of definiteness of the meaning to be given the term. This solemn legal jugglery with words will probably disappear 'if the nature of the duty incumbent upon the servant be considered.' If the servant owe a duty to third persons derived

from an instrumentality likely to do harm or otherwise, and he violates that duty, he is responsible. His responsibility rests on his wrong doing, not on the positive or negative character of his conduct. A wrongful omission is as actionable as a wrongful commission."

Our courts have in later decisions adopted a rule limiting considerably the distinction between nonfeasance and misfeasance. Cobb, J., in delivering the opinion of the court in *Southern Ry. Co.* v. *Grizzle,* 124 *Ga.* 735 (53 S. E. 244, 110 Am. St. R. 191), used this language: "Nonfeasance is the total omission or failure of the agent to enter upon the performance of some distinct duty or undertaking which he has agreed with his principal to do. Misfeasance means the improper doing of an act which the agent might lawfully do; or, in other words, it is the performing of his duty to his principal in such a manner as to infringe upon the rights and privileges of third persons. Where an agent fails to use reasonable care or diligence in the performance of his duty, he will be personally responsible to a third person who is injured by such misfeasance. The agent's liability in such cases is not based upon the ground of his agency, but upon the ground that he is a wrongdoer, and as such he is responsible for any injury he may cause. When once he enters upon the performance of his contract with his principal, and in doing so omits, or fails to take reasonable care in the commission of, some act which he should do in its performance, whereby some third person is injured, he is responsible therefor to the same extent as if he had committed the wrong in his own behalf. See 2 Clark & Skyles on Agency, § 1297, et seq. Misfeasance may involve also to some extent the idea of not doing; as where an agent engaged in the performance of his undertaking does not do something which it is his duty to do under the circumstances, or does not take that precaution or does not exercise that care which a due regard to the rights of others requires. All this is not doing, but it is not the not doing of that which is imposed upon the agent merely by virtue of his relation, but of that which is imposed upon him by law as a responsible individual in common with all other members of society. It is the same not doing which constitutes actionable negligence in any relation." In *Southern Ry. Co.* v. *Rowe,* 2 *Ga. App.* 557 (59 S. E. 462), it was said: "In Ellis *v.* McNaughton, 15 Am. St. R. 308, 76 Mich. 237, 242, and Lough *v.*

Davis, 94 Am. St. R. 848, 30 Wash. 204, it was held that misfeasance may involve, to some extent, the idea of not doing, as where an agent, while engaged in the performance of his undertaking, does not do something which it is his duty to do under the circumstances, as, for instance, when he does not exercise that care which a due regard for the right of the other party requires. Such negligence as would be actionable in any relation of life is misfeasance by not doing." See also *Southern Ry. Co.* v. *Reynolds,* 126 *Ga.* 657 (55 S. E. 1039) ; *Postal Telegraph-Cable Co.* v. *Puckett,* 24 *Ga. App.* 458 (101 S. E. 397) ; *Southern Ry. Co.* v. *Sewell,* 18 *Ga. App.* 544 (90 S. E. 94) ; *Southern Ry. Co.* v. *Bottoms,* 35 *Ga. App.* 804 (134 S. E. 824).

In the case of Carter *v.* Atlantic Coast Line R. Co., 84 S. C. 546 (66 S. E. 997), in which it was held, under similar facts to the case sub judice, that the servant or section boss was equally liable with the railroad for their failure to keep their right of way clean of dry grass and combustible matter, the following language is found : "The relation which the defendant sustained to the public, while discharging the duties of his employment, are thus stated in Mayer *v.* Thompson-Hutchison Building Co., 104 Ala. 611 (16 So. 620, 28 L. R. A. 433, 53 Am. St. R. 88) : 'The liability of the principal or master to third persons does not depend upon any privity between him and such third persons. It is the privity between the master and servant that creates the liability of the master, for injuries sustained by third persons on account of misfeasance or nonfeasance of the servant or agent. It is difficult to apply the same principles which govern in matters of contract, between an agent and third persons, to the torts of an agent which inflict injury on third persons, whether they be of misfeasance or nonfeasance, or to give a sound reason why a person, who, acting as principal, would be individually liable to third persons for an omission of duty, becomes exempt from liability for the same omission of duty because he was acting as servant or agent. The tort is none the less a tort to a third person, whether suffered from one acting as principal or agent, and his rights ought to be the same against the one whose neglect of duty has caused the injury.' In a note to this case (28 L. R. A. 433-4), after the statement that there are many misleading dicta to the effect that nonfeasance of a servant causing injury to third persons is not generally a ground

of action in their favor against the servant, and that these dicta can all be traced to a dictum in a dissenting opinion in Lane v. Cotton, 12 Mod., 488, 1 Ld. Raym. 646, we find the following language: 'These dicta and text-book statements based upon them have had the pernicious effect of confusing the subject because they do not distinguish between the direct liability of an agent or servant to third persons, for breach of his own duty towards them, and an indirect liability to them for breach of duty to his own employer, and fail to recognize or indicate the fact that an agent or servant may owe duties to third persons, at the same time he owes service to his employer, and that the common duty to regard the rights of our fellowmen is none the less binding upon a person because he happens to be at the time an agent or servant. An analysis of all the cases on the subject shows that in almost every instance, negligence of an agent or servant has been held to make him liable to a third person injured thereby, provided he would have been held liable if acting on his own behalf, under circumstances otherwise unchanged. The difficulty seems to vanish almost, if not entirely, when the test of liability of an agent or servant to a third person on account of his nonfeasance or negligence is taken to be his nonperformance of a duty toward them. Where such duty and neglect thereof appear, it seems utterly unreasonable to say, that the negligent person shall not be liable, merely because he was the agent or servant of some other person, to whom he might also be liable. To say that liability for failure to perform a duty toward a person who is injured in consequence, shall not exist, because the guilty person is in the same transaction also guilty of a breach of duty to a different person is to state a proposition condemned by the analogies of the law, as well as by reason." See also Ellis v. Southern Ry. Co., 72 S. C. 465 (52 S. E. 228, 2 L. R. A. (N. S.) 378). In Mayer v. Thompson, supra, it was said: "There is no sound reason why a person who, acting as principal, would be individually liable to third persons for an omission of duty becomes exempt from liability for the same omission of duty, because he was acting as servant or agent." In Baird v. Shipman, 132 Ill. 16 (23 N. E. 384, 7 L. R. A. 128, 22 Am. St. R. 504), it was said: "It is not his contract with his principal which exposes him to or protects him from liability to third persons, but his common law obligations to so use that which he controls as not to injure an-

other. The obligation is neither increased nor diminished by his entrance upon his duties of agency, nor can its breach be excused by the plea that his principal is chargeable." In Lough *v.* John Davis Co., 30 Wash. 204 (70 Pac. 491, 59 L. R. A. 802, 94 Am. St. R. 848), it was said: "An agent having charge of buildings to be leased for his principal, with authority to make necessary repairs, is liable for injuries to tenants caused by his failure to make them."

We recognize that the broad statement that an agent or servant is liable for a misfeasance, but not for a nonfeasance, has long been an accepted principle in this State and until comparatively recent times has been followed by our courts. As will be seen from the more recent Georgia cases heretofore cited, this principle has been criticized and limited. The tendency, however, has been nominally to adhere to the letter of the principle, but to say that a nonfeasance in most instances amounts to a misfeasance. Judge Wade, in *Southern Ry. Co.* v. *Sewell,* supra, quotes approvingly this language: "If an agent never does anything towards carrying out his contract with his principal, but wholly omits or neglects to do so, the principal is the only person who can maintain an action against him for the nonfeasance, but if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to exercise reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts [*or failure to act*], and he can not, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of having left them without proper safeguards." The duty owed the master by the servant is generally one of contract. His nonfeasance may be a breach of this contract. The violation of a duty a servant owes a third person is a tort, whether it be a so-called misfeasance or nonfeasance. When the servant assumes to act for the master, his duty to third persons, so far as relates to the proper performance of the obligations assumed for and in behalf of the master, is, to the extent of such assumption of duty, the same as that of the master, and his failure to perform makes him liable as the master, provided, of course, his failure to perform can be said to be the proximate cause of the injury. He can not justify himself as Cain did of old by asking, "Am I my

brother's keeper?" Having assumed the keeping, he must perform the task and be answerable for its breach.

Taking the present petition under consideration, it is a joint action against both the employer and the employee for concurrent acts of negligence. It alleges that it was the duty of the defendant railroad company at all times to keep its right of way reasonably clear and free of dry grass and weeds and other easily ignitable substances; that, recognizing this duty to the public, it was one of the duties of the section foreman, B. C. Poppell, to keep the said right of way clear; that the defendants partly performed this duty by, "just preceding the time in question, burning over and freeing from easily ignitable material the greater portion of the right of way in the area in question," but did not complete this duty by clearing off the small strip where the fire caught, which strip was not more than a quarter of a mile in width; that the defendants actually cleared this portion of the right of way of trees and high bushes, "by reason of which dry grass could and did grow in large quantities thereon and had grown and had accumulated in said area, and said portion of said right of way was so covered at the time of and preceding said fire;" that there was nothing to prevent the defendants from clearing said portion of the right of way. The defendant Poppell had control of a dangerous situation which he might have contemplated would be dangerous in the normal course of human events. It was his positive duty to the plaintiff not to injure his property. His failure to act may be considered the sole juridic cause of the injury. See, in this connection, *Atlantic Coast Line R. Co.* v. *Daniels,* 8 *Ga. App.* 775 (70 S. E. 203). A servant is personally liable to third persons when his wrongful act in the course of his employment is the direct and proximate cause of their injury, whether the wrongful act be one of misfeasance or nonfeasance. We think, therefore, that the court below did not err in overruling the railroad company's petition for removal to the Federal court.     *Judgment affirmed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. The question of the removal of a case to the Federal court is determined by the *facts* set forth in the plaintiff's petition and not by the conclusions alleged therein; and it is for the court to determine from the *facts* alleged whether a cause of action is set out against the resident defendant. See, in this connection, *Brown* v. *Massachusetts Mills,* 7 *Ga. App.* 642 (67

64

S. E. 832) ; *Williams* v. *Stewart,* 115 *Ga.* 864 (2) (42 S. E. 256). The *facts* set forth in the instant petition fail to set out a cause of action against the resident defendant, and the court erred in denying the petition for removal filed by the nonresident defendant.