## WARSHAUER v. LLOYD SABAUDO S. A.

### No. 407.

Circuit Court of Appeals, Second Circuit.

June 4, 1934.

Barron, Rice & Rockmore, of New York City (Bernard S. Barron and George P. Halperin, both of New York City, of counsel), for appellant.

Loomis, Williams & Donahue, of New York City (Homer L. Loomis and Thomas F. Peterson, Jr., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action at law by the plaintiff Warshauer, a citizen of the United States and a resident of New York City, against an Italian corporation which owned and operated the steamship Conte Biancamano. In substance the complaint alleges that on the afternoon of October 31, 1931, the plaintiff and a companion were adrift on the high seas in a disabled motorboat, without gasoline and without food, when the defendant's steamer passed within hailing distance; that he exhibited a recognized signal of distress and requested the steamer to come to his assistance, and the defendant's servants on said steamer, particularly its operating personnel, clearly observed his signals of distress, but refused to heed them or to stop and take the plaintiff aboard, although they could have done so without peril to themselves or their vessel; that two days later the plaintiff was

rescued by a Coastguard cutter. In the meantime and in consequence of the exposure and deprivations to which he was subjected by the failure of the defendant's steamship to render the requested aid, the plaintiff suffered permanent physical injuries for which, together with the attendant pain and subsequently incurred medical expenses, he demands damages. On motion to dismiss, equivalent to a demurrer, the District Court held the complaint insufficient, and the correctness of this ruling is the issue presented by this appeal.

Argument of counsel has taken a wider range than the precise issue presented by the pleadings requires. The question chiefly debated was whether the common law or the law of the sea recognizes the existence of a legal duty coextensive with the universally admitted moral duty to rescue a stranger from peril, when this can be done without risk to the one called upon for help. This interesting problem we pass by as unnecessary to the decision, as did the District Court.[1]

The precise issue is whether a shipowner is liable for damages to a stranger in peril on the high seas to whom the ship's master has failed to give aid. This situation, it may be noted, involves no personal dereliction of a moral duty by the person sought to be held to respond in damages. Such dereliction was that of the master, and only by applying the doctrine of respondeat superior can it be imputed to the ship's owner; moral obliquity is not imputed to one personally innocent. It is conceded that no authority can be found which has imposed legal liability on the owner

in such circumstances. Dicta adverse to liability are contained in Saunders v. The Hanover, Fed. Cas. No. 12,374 and United States v. Knowles, Fed. Cas. No. 15,540. Cf. Harris v. Penn. R. R. Co., 50 F.(2d) 866 (C. C. A. 4); Cortes v. Baltimore Insular Line, 287 U. S. 367, 377, 53 S. Ct. 173, 77 L. Ed. 368. The absence of specific precedent, however, is no insuperable barrier, for the law of the sea can grow by judicial decision no less than the common law. See Cain v. Alpha S. S. Corp., 35 F.(2d) 717, 722 (C. C. A. 2). But a court should be slow to establish a new legal principle not in harmony with the generally accepted views of the great maritime nations.

Their views on this subject are disclosed in the International Salvage Treaty, which was drafted by representatives of more than twenty nations, meeting at Brussels in 1910, and to which both Italy and the United States are parties. 37 Stat. 1658, 1672. Articles 11 and 12 of the treaty relate to the matter under consideration and read as follows:

### "Article 11.

"Every master is bound, so far as he can do so without serious danger to his vessel, her crew and passengers, to render assistance to everybody, even though an enemy, found at sea in danger of being lost.

"The owner of the vessel incurs no liability by reason of contravention of the foregoing provision.

### "Article 12.

"The High Contracting Parties whose legislation does not forbid infringements of the preceding article bind themselves to take or to propose to their respective legislatures the

---

1 Most of the authorities gathered by the industry of the respective counsel are cited below.

In support of the view that the common law does not compel active benevolence to a stranger whose plight the defendant has neither occasioned nor aggravated, see Am. L. Inst., Restatement of Torts (Proposed Final Draft No. 2) § 192; Ames, Lectures on Legal History, 435, 450; Buch v. Amory Mfg. Co., 69 N. H. 257, 44 A. 809, 76 Am. St. Rep. 163; Union Pac. Ry. Co. v. Cappier, 66 Kan. 649, 72 P. 281, 69 L. R. A. 513; Allen v. Hixson, 111 Ga. 460, 36 S. E. 810; King v. Interstate Consol. Ry., 23 R. I. 583, 51 A. 301, 70 L. R. A. 924; Griswold v. Boston & Maine Ry. Co., 183 Mass. 434, 67 N. E. 354; Herd v. Wearsdale Steel Corp., [1913] 3 K. B. 771, aff'd [1915] A. C. 67.

A tendency toward a more liberal view is indicated in the following cases: Cardozo, Paradoxes of Legal Science, 25; Pound, Law and Morals, 72; Wagner v. International Ry. Co., 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1; Brandon v. Osborne Garrett & Co., [1924] 1 K. B. 548; Wilkinson v. Kinneil Cannel Co., 34 Scot. L. R. 533; Waters v. Taylor Co., 218 N. Y. 248, 112 N. E. 727, L. R. A. 1917A, 347; Hollaran v. City of New York, 168 App. Div. 469, 153 N. Y. S. 447; Gibney v. State of New York, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365. 33 Am. St. Rep. 690; Muhs v. Fire Ins. Salvage Corp., 89 App. Div. 389, 85 N. Y. S. 911; Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485; Southern R. R. Co. v. Sewell, 18 Ga. App. 544, 90 S. E. 94; Pate v. Steamboat Co., 148 N. C. 571, 62 S. E. 614; Kimber v. Gas Light & Coke Co., [1918] 1 K. B. 439; Queen v. Instan, [1893] 1 Q. B. 450.

measures necessary for the prevention of such infringements. \* \* \* "

The treaty was ratified by the United States in 1912, to become effective on March 1, 1913. In the meantime Congress passed legislation in fulfillment of the obligation imposed by article 12 of the treaty. Section 2 of the Act of Aug. 1, 1912, provides as follows (37 Stat. 242, 46 USCA § 728):

"Sec. 2. That the master or person in charge of a vessel shall, so far as he can do so without serious danger to his own vessel, crew, or passengers, render assistance to every person who is found at sea in danger of being lost; and if he fails to do so, he shall, upon conviction, be liable to a penalty of not exceeding $1,000 or imprisonment for a term not exceeding two years, or both."

 The appellant contends that the declaration in article 11 that the shipowner "incurs no liability by reason of contravention" of the master's obligation to render assistance refers only to criminal liability of the owner. Such an interpretation would seem a most unlikely meaning. Unless it was intended to cover civil liability, no reason is apparent for mentioning the shipowner's exemption from liability. It is almost inconceivable that criminal responsibility should be imputed to an owner who had not directed the dereliction of his agent. In the United States, at least, imputed crime is substantially unknown. A penal statute is construed to apply only to the class of persons to whom it specifically refers. Field v. United States, 137 F. 6, 8 (C. C. A. 8). The same principle should be equally applicable to the construction of a treaty. Hence if the first sentence of article 11 refers only to the master's public duty, breach of which is to be enforced by the criminal law, there was no need to express the owner's exemption from responsibility. If, however, the master's liability may be civil as well as criminal, then the provision referring to the owner serves a purpose and clearly relieves him from civil liability.

It is further urged that the treaty is not self-executing, that article 11 is no more than an expression of policy and by the very terms of article 12 requires legislation to carry it into effect (cf. Foster v. Neilson, 2 Pet. 253, 314, 7 L. Ed. 415), and that Congress in enacting such legislation dealt only with the criminal liability of the master, leaving untouched the civil liability of both master and owner, so that no implication can be drawn, either from the treaty or the statute, that civil liability does not exist. On the contrary, the argument proceeds, the enactment of a criminal statute for the protection of a class creates a right of civil action in a member of the class who is caused harm by an infraction of the statute. Texas & Pac. Ry. Co. v. Rigsby, 241 U. S. 33, 39, 36 S. Ct. 482, 60 L. Ed. 874. Granting all this, the appellant advances no further than to establish a cause of action against the violator of the criminal statute; that is, the master. He must still prove that the master's breach of duty is imputable to his employer. It is at this point that the absence of precedent and the declaration of the treaty against liability on the part of the owner stands in his way. As a declaration of the views of the great maritime nations, the treaty needs no "implementation" by legislation. We are not at liberty to make new law in the face of that declaration. See article 15 of the Treaty (37 Stat. 1672).

Judgment affirmed.